# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01223-SCT

*K-MART CORPORATION*

*v.*

*MARION A. HARDY, A MINOR, BY AND THROUGH HIS NATURAL AND LEGAL GUARDIAN, DEBORAH HARDY AND LARRY HARDY, SR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/24/97 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM L. McDONOUGH, JR. |
| | MARY MARGARET ALEXANDER |
| ATTORNEYS FOR APPELLEES: | JAMES KENNETH WETZEL |
| | MARIANO JAVIER BARVIE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 03/18/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/14/99 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Hardy filed this action in Harrison County Circuit Court on December 11, 1990, for injuries received from a slip and fall on May 23, 1990, at the D'Iberville, Mississippi, Kmart Store. On November 27, 1991, Kmart filed a motion for summary judgment. On October 20, 1992, the trial court entered an Order granting Kmart's motion for summary judgment and dismissed the action. Hardy perfected a timely appeal to this Court. On February 16, 1996, this Court entered an opinion which affirmed the decision of the trial court in part, reversed and remanded in part. The initial trial of this action began on November 19, 1996, and ended in a mistrial on November 20, 1996. The second trial of this cause began on February 3, 1997, and resulted in a mistrial on February 4, 1997. The third trial of this action, which is the subject of this appeal, began on July 22, 1997, and the jury returned a verdict on behalf of Hardy in the amount of $250,000.00. Final judgment reflective of the jury verdict was entered by the trial court on July 24, 1997. Kmart filed its Motion for Judgment Notwithstanding the Verdict or in the Alternative Motion for New Trial or in

the Alternative Motion for Remittitur on August 8, 1997. On September 10, the trial court entered an Order Overruling Motion for New Trial and/or Judgment Notwithstanding the Verdict. Kmart filed its Notice of Appeal on September 19, 1997. On September 22, the trial court entered an Amended Order Overruling the Motion for Judgment Notwithstanding the Verdict, New Trial and Remittitur. Kmart raised the following issues in its appeal:

> **I. WHETHER HARDY FAILED TO OFFER ANY EVIDENCE THAT THE MANNER IN WHICH THE "END CAP" WAS CONSTRUCTED PROXIMATELY CAUSED HIS INJURIES?**
>
> **II. WHETHER THE TRIAL COURT ERRED IN FAILING TO ADMIT EVIDENCE OF THE PROFFERED TESTIMONY OF ROBERT REUTER AND THE DEMONSTRATIVE EXHIBIT OF A RECONSTRUCTED PORTION OF THE "END CAP"?**
>
> **III. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, EVIDENCING BIAS AND PREJUDICE?**

## STATEMENT OF THE FACTS

¶2. During their lunch hour on May 23, 1990, Marion Hardy (hereinafter "Hardy") and his brother, Larry Hardy, Jr., went to the Kmart store in D'Iberville, Mississippi to buy paint which would be used to paint some shelves they were making to take back to school with them at the end of the summer. Hardy testified that the two proceeded down different aisles to the home improvements department. Hardy arrived at the paint section first, and as he rounded the aisle, he slipped in a paint spill on the floor and fell. Hardy further testified that when he fell he heard something go pop, and as his brother approached him to try to help him up, he told Larry that he felt something pop and he did not know what it was. Hardy noted that the pop sensation was in his lower back right around the belt line.

¶3. As Hardy gathered himself and stood up, he began to look around to see what he had stepped on to cause the fall. He testified that there was paint on the floor and that there was a paint can on the floor which was the same color as the paint cans on the display or "end cap" (displays located on the end of an isle), right above where he had fallen. Hardy stated the paint spill was approximately a two and a half to three feet circular puddle, and the paint can and lid were located on the edge of the spill. He noted that the paint can was located approximately a foot and a half away from a stacked paint can display at the end of the aisle. Hardy further testified that the paint can was laying on the floor on its side and that the top of the can was lying right in front of the can.

¶4. Hardy testified on cross-examination that he had no independent recollection of how many levels of paint cans were stacked in the aisle display at the time of his fall. However, he then testified that the photographs taken by his private investigator accurately reflected his recollection of the end cap.

¶5. Larry Hardy, Hardy's brother, testified at trial that he was half-way down the aisle in the home improvement section of the Kmart when he heard a loud thump. As Larry approached his brother, Hardy, he saw Hardy on his rear-end with his feet out in front of him. Hardy told Larry that something in his back had popped. Larry further testified that he saw a paint can on the floor right next to the end cap and further

testified that the color of the paint can on the floor was the same as the paint cans on the display.

¶6. Mr. Reuter, the assistant merchandising manager at Kmart at the D'Iberville in May of 1990, testified that he shared with the operations assistant manager the responsibility of making sure the merchandise on the end-caps were properly displayed. Reuter noted that the corporate office in Michigan supplied the store with booklets which had pictures depicting how to properly construct the merchandise displays. He further stated that he did not know who was responsible for setting up the end-cap display that was present on May 23, 1990. However, Reuter testified that as the assistant merchandising manager, he would not have configured the end-cap in the manner which was displayed in photograph exhibits 2 and 3 as it was unsafe. Reuter stated that as he approached the scene of the spill, he observed a paint can the same color as the paint cans of the display directly above where the paint can that spilled was located.

¶7. Reuter next explained that when a display consisted of more than two or three layers of paint cans a thin layer of shelving material was normally placed, in a recessed fashion, between each two to three layers of cans. He noted that if a display did not have shelving material between every two to three layers of paint cans, it would be unsafe. Reuter was then shown a photograph of the paint can end display taken by Hardy's investigator soon after the incident occurred and was asked whether any shelving material was evident. Reuter stated that because it was Kmart procedure was to recess the shelving material for aesthetic purposes, he believed that the shelving material would not have been evident in the photograph. Thus, he was not able to discern any shelving material in the photo.

¶8. It was at this point in the trial that Kmart's counsel requested the trial judge's permission to allow Reuter to assemble a portion of an end cap to show why the shelving material was not evident in the photograph. However, Kmart only wanted to build the end-cap two levels high when it was clear that the end-cap display at the time in question was at least four levels high. Therefore, Hardy's counsel objected. The jury was excused, and Reuter was allowed to assemble a proffer exhibit consisting of paint cans stacked two levels high with shelving material in between the layers. Photographs of the proffered exhibit were taken for preservation of the issue on appeal. Hardy's counsel also objected on the ground that Kmart did not include the proffered exhibit in its initial response to a request for production of documents which requested Kmart to produce a copy of all documentary or demonstrative evidence it intended to use at trial, and that Kmart had failed to supplement its response. Counsel for Kmart stated that the response was complete at the time it was made and only recently had the issue of the visibility of the stabilizing material become significant. He further stated that the demonstrative evidence was being offered solely for rebuttal purposes and that pursuant to Rule 26(f), the demonstration was not a discovery violation. Based on the rules governing discovery, the trial judge sustained Hardy's objection.

¶9. Jerry Duprey, the assistant working for Kmart who cleaned up the spill, also testified in the present case. He testified that Hardy located him in the garden department and informed him that he had almost slipped in a paint spill and that someone needed to clean it up. He explained that when he approached the scene of the spill, the can of paint was no more that about a foot from the corner of the end-cap. He further testified that the paint was concentrated in a circular area, and that the paint did not splash or splatter into the surrounding area. He also stated that he did not notice if there were any tracks or footprints to indicate if someone had walked through or slipped in the paint. However, he did note that the can of paint on the floor was exactly the same type of paint as on the end-cap display, white latex.

¶10. After all testimony and evidence was presented, the jury returned a verdict on behalf of Hardy in the

amount of $250,000.

## DISCUSSION OF THE ISSUES

### I. WHETHER HARDY FAILED TO OFFER ANY EVIDENCE THAT THE MANNER IN WHICH THE "END CAP" WAS CONSTRUCTED PROXIMATELY CAUSED HIS INJURIES?

¶11. Kmart argues that Hardy failed to make a jury issue on negligence because he failed in the burden of proof on the elements of both breach and proximate cause. Thus, Kmart believes that the trial court erred in denying its Motion for JNOV. Hardy asserts that he provided legally sufficient evidence of negligence and that the verdict of the jury should be affirmed.

¶12. When reviewing the trial court's denial of a Motion for Judgment Notwithstanding the Verdict, this Court's scope of review is limited as follows:

> Where, as here, the trial judge has refused to grant a motion for JNOV, we examine all of the evidence--not just evidence which supports the non-movant's case--in the light most favorable to the party opposed to the motion. All credible evidence tending to support the non-movant's case and all favorable inferences reasonably drawn therefrom are accepted as true and redound to the benefit of the non-mover. If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, the motion should be granted. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the jury verdict should be allowed to stand and the motion denied, and, if it has been so denied, we have no authority to reverse.

*C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1098 (Miss. 1992) (*citing Royal Oil Co. v. Wells*, 500 So. 2d 439, 442 (Miss. 1986); *Stubblefield v. Jesco, Inc.*, 464 So. 2d 47, 54 (Miss. 1984); *City of Jackson v. Locklar*, 431 So. 2d 475, 478 (Miss. 1983); *Paymaster Oil Mill Co. v. Mitchell*, 319 So. 2d 652, 657 (Miss. 1975)). Furthermore, "[t]he rule in this state is that the action of the trial court upon a motion for a new trial is to be favorably considered upon appeal and supported unless manifest error appears or unless its action in sustaining the motion manifests an abuse of discretion." *Mississippi State Highway Comm'n v. Hancock*, 309 So. 2d 867, 871 (Miss. 1975).

¶13. In Mississippi, a plaintiff may espouse one of three theories in support of a claim of negligence such as this: (1) that defendant's own negligence created a dangerous condition which caused plaintiff's injury; (2) that defendant had actual knowledge of a condition which defendant itself did not cause, but defendant failed to adequately warn plaintiff of the danger she faced as an invitee; or (3) that, based upon the passage of time, defendant should have known of the dangerous condition caused by another party if defendant had acted reasonably, i.e., constructive knowledge of the condition should be imputed to defendant. *Down v. Choo*, 656 So. 2d 84, 86 (Miss. 1995) (*citing Munford, Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss. 1992)). Here, the Court needs only to address the first theory-that of negligence on the part of defendant itself-because Hardy acknowledges that this case is not one predicated upon whether Kmart had sufficient notice that the spilled product, paint, was on the floor. Rather, Hardy is accusing Kmart of negligence in stocking the paint cans on the end-cap incorrectly resulting in their falling onto the floor and

creating a puddle of paint.

¶14. In order to prevail on a negligence claim, a plaintiff must prove by a preponderance of the evidence each element of negligence: duty, breach of duty, proximate causation, and injury. *Lovett v. Bradford*, 676 So. 2d 893, 896 (Miss. 1996) (*citing* *Palmer v. Anderson Infirmary Benev. Ass'n.*, 656 So. 2d 790, 794 (Miss. 1995)). Mississippi law imposes upon a business owner or operator a duty to the invitee to keep its premises in a reasonably safe condition and to warn of dangerous conditions which are not readily apparent to the invitee. *Munford, Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss.1992); *Jerry Lee's Grocery, Inc. v. Thompson*, 528 So. 2d 293, 295 (Miss.1988). No proof of the operator's knowledge of the condition is necessary where the condition is created by his negligence or the negligence of someone under his authority. *Douglas v. Great Atlantic & Pac. Tea Co.*, 405 So. 2d 107, 110 (Miss.1981); *Winn Dixie v. Hughes*, 247 Miss. 575, 156 So. 2d 734, 736 (1963). There is no dispute that Hardy was an invitee on the premises to whom Kmart owed the duty of exercising such reasonable care to keep the premises reasonably safe or to warn of dangers known to Kmart but unknown, hidden or concealed to patrons, specifically having an end-cap built in a manner which is reasonably safe.

¶15. In order for Hardy to recover under the negligence theory, he bears the burden of presenting significant, probative evidence that Kmart was not only negligent, but also that such negligence was the proximate cause of the dangerous condition that resulted in Hardy's injury. *Munford*, 597 So. 2d at 1284 (Miss. 1992). Hardy argues that the dangerous condition in this case, the spilled paint on the floor, can be traced to the negligent manner in which Kmart stacks its paint cans on an end-cap display.

¶16. Hardy supports his argument of Kmart's negligence with his own testimony that the paint spill was a two and a half to three feet circular puddle, and the can and lid were located adjacent to t he spill and approximately a foot and a half away from a stacked display at the end of the aisle. Furthermore, although Hardy testified that he had no independent recollection of the manner in which the paint can end display was stacked, after viewing a photograph taken by his investigator which allegedly depicted the same end display approximately a week after the incident at issue, Hardy testified that the photograph was an accurate representation of the end-cap display at the time of his fall. He stated that the can of paint on the floor was the same color as the cans of paint on the end-cap display. On viewing the photograph, Hardy testified that he was unable to discern any shelving material between the stacked layers of paint cans.

¶17. Hardy contends that since negligence may be proven by circumstantial evidence, it would be reasonable for a jury to conclude that a Kmart employee constructed the end-cap display in a faulty manner. This Court has said:

> In determining whether there was sufficient evidence on the question of defendant's negligence for decision of that issue by a jury two well established principles should be kept in mind. One is that negligence may be established by circumstantial evidence in the absence of testimony by eyewitnesses provided the circumstances are such as to take the case out of the realm of conjecture and place it within the field of legitimate inference . . . .

*Downs v. Choo*, 656 So. 2d 84, 90 (Miss. 1995) (Sullivan, P.J., dissenting)(*citing* *Moore v. Winn-Dixie Stores, Inc.*, 252 Miss. 693, 703, 173 So. 2d 603 (1965) (*quoting* *Johnston v. Canton Flying Services, Inc.*, 209 Miss. 226, 46 So. 2d 533 (1950)). It is true that one explanation for the paint spill being present on the floor is that an employee's configuration of the end-cap display was faulty which resulted in a paint can falling from the display. We find that this inference would be a reasonable or reliable

inference for the jury to make. Consequently this Court finds that when the standard of review is applied, Hardy not only met his burden of proof, but there was also ample evidence for the jury to find on behalf of Hardy.

¶18. As stated previously, Hardy testified that the two photographs which were pictures of the end-cap display in question taken one to three weeks after the fall accurately depicted the way the end-cap display looked on the day in question. However, concerning the issue of whether the paint spill was created through negligent acts of Kmart employees, there was additional sufficient evidence presented, other than Hardy's own testimony, which would have allowed the jurors to conclude that the fallen paint can was caused by Kmart's employees' setting up a faulty end-cap display. According to Reuter, the paint cans were placed on the end-cap by Kmart's employees. He further stated that the end-cap display as depicted in the two photographs was unsafe because the end-cap appeared to be missing the necessary shelving material. Additionally, there was ample testimony at the trial that the paint from which Hardy slipped came from a paint can which was exactly similar to the paint cans on display on the end-cap. Also, the testimony was undisputed that the fallen paint can was found approximately a foot from the display. Reuter further stated that he had no reason to believe that the paint can on the floor came from any other display than the end-cap just above the area where the paint had spilled. While upon this evidence the jury could have found that someone other than a Kmart employee was responsible for the paint spill, it was also possible that the jury having heard Hardy's testimony, Reuter's testimony and viewed their credibility found a Kmart employee improperly stacked the end-cap display or failed to place shelving material between the necessary levels of paint cans causing the paint can to fall from the display.

¶19. In ***Winn-Dixie Supermarkets, Inc. v. Hughes***, 247 Miss. 575, 156 So. 2d 734 (1963), a plaintiff slipped on vermicelli that had spilled from a store shelf onto the floor after its package had been sliced open. Shortly before the accident occurred, several children were seen leaving the store with "spaghetti" in their hands, which could have implied that they opened package. However, when the store's employees stocked the shelves, they opened cases of vermicelli packages by cutting them with a knife, which could have implied the employees caused the vermicelli to spill. In affirming a verdict for the plaintiff and addressing the evidence which painted towards two possible causes of the plaintiff's fall, this Court stated:

> . . . the jury was not required to accept defendant's [the store's] contention that the . . . children damaged the package and were the sole proximate cause of this accident, and thus to absolved defendants from liability. The claims of appellants would have to be based on circumstantial evidence and inferences, and these also were considerations for the jury, which declined to accept them.

***Hughes***, 247 Miss. at 588-89, 156 So. 2d at 734.

¶20. Like ***Hughes***, the present case presents a factual question of causation that was subject to different determinations. Because this determination was properly for the jury to make, this Court finds the circuit court did not err in denying Kmart's motion for JNOV. ***Munford, Inc. v. Fleming***, 597 So. 2d at 1285. Therefore, this assignment of error is without merit.

### II. WHETHER THE TRIAL COURT ERRED IN FAILING TO ADMIT EVIDENCE OF THE PROFFERED TESTIMONY OF ROBERT REUTER AND THE DEMONSTRATIVE EXHIBIT OF A RECONSTRUCTED PORTION OF THE "END CAP"?

## A. WHETHER THE TRIAL COURT ERRED IN FAILING TO ADMIT INTO EVIDENCE THE PROFFERED TESTIMONY OF REUTER?

¶21. Kmart next contends that the trial court abused its discretion and committed reversible error in finding the proffered testimony of Reuter irrelevant and in excluding it from the jury. Our standard of review for the admission of or refusal to admit evidence is well settled. "'[A]dmission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion.' " *Broadhead v. Bonita Lakes Mall, Ltd. Partnership*, 702 So. 2d 92, 102 (Miss. 1997) (*quoting* *Sumrall v. Mississippi Power Co.*, 693 So. 2d 359, 365 (Miss.1997)); *General Motors Corp. v. Jackson*, 636 So. 2d 310, 314 (Miss.1992); *Walker v. Graham*, 582 So. 2d 431, 432 (Miss.1991). Furthermore, for a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party. *Hansen v. State*, 592 So. 2d 114 (Miss.1991).

¶22. In the present case, testimony was elicited from Hardy on cross-examination that he had no independent recollection of how many levels of paint cans were stacked in the end display at the time of his fall. Hardy then testified on redirect examination that photographs taken by his private investigator approximately one week after the accident accurately reflected his recollection of the end cap at issue. To rebut Hardy's testimony that the end-cap depicted in the photographs was the actual end-cap as it existed on the day in question, Reuter testified that weekly directives were received from the corporate office instructing the local stores to change the corporate end-cap displays every Friday and/or Saturday night in preparation for the sale advertisements which would be published in the Sunday newspaper. Thus, corporate end-cap displays, as opposed to in-store end-cap displays, would have been changed weekly in accordance with corporate policy. Reuter was then asked on direct examination, "If the accident occurred on Wednesday (June 23, 1990) when would the end-cap have been changed after the accident." Hardy's attorney objected on the basis of speculation.

> BY MR. WETZEL: I'm going to object, Your Honor. The witness has testified earlier he didn't build the end-cap and that he doesn't know who built the end-cap, and wasn't responsible for building the end-cap. That's his testimony earlier. I object on the basis that there's been no predicate laid as to whether or not he can say whether it was built to corporate accepted standards . . . .

> BY MR. WETZEL: I'm going to object to his testimony, Judge. If he doesn't know the difference then what purpose - what relevancy does it have as to whether he says, "I don't know if it's a corporate or in-store directive." The purpose of this question, I don't know what the relevancy is. It has no probative value to how this particular display was erected.

> . . . .

> BY MR. WETZEL: I'm going to object, Your Honor, because the man has already testified that he does not know when this end-cap was built, he doesn't know when it was taken down, he doesn't know who built the thing. This man is speculating.

¶23. Counsel for Kmart responded that the testimony was being offered to rebut Hardy's claim that the photographs introduced accurately depicted the paint can end-cap at the time of his fall. The trial court sustained Hardy's objection and found the testimony to be irrelevant. Counsel for Kmart made a proffer in which Reuter testified that the paint can end-cap at issue would have been changed on the Friday or Saturday night after the accident on Wednesday, which affects the probability that the photographs taken a

week after the accident did not accurately depict the paint can end-cap as it existed on the day of the incident, Wednesday, June 23, 1990. Thus, in other words, Reuter was giving his opinion that the end-cap display in the present case was a corporate end-cap.

¶24. Reuter's proffered testimony was something of which he had no personal knowledge. No expert at trial testified to this conclusion nor was Reuter proffered as an expert concerning corporate end-cap displays. Thus, his testimony is in the form of a lay opinion, and thus subject to Mississippi Rule of Evidence 701 which states:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.

¶25. Moreover, the comment to Rule 701 explains the two-part test for the admissibility of lay witness opinion testimony. First, the testimony must assist the trier of fact. Second, the opinion must be based on the witness's firsthand knowledge or observation. M.R.E. 701. cmt.; see also *Wells v. State*, 604 So. 2d 271, 278-79 (Miss.1992) (applying this same two- part test). The second prong of the test is in accordance with M.R.E. 602 requiring that a witness who testifies about a certain matter have personal knowledge of that matter.

¶26. Reuter's testimony is clearly not admissible pursuant to Mississippi's evidentiary Rules 602 and 701. A layperson, such as Reuter, is qualified to give an opinion because he has firsthand knowledge which other laypeople, i.e., the jury, do not have. *Wells*, 604 So. 2d at 279. Here, Reuter testified unequivocally that he did not know whether the end-cap was a corporate end-cap or not. In fact, Reuter admitted that he did not even know how long that end-cap had been there. Reuter testified as follows:

> Q. It is not a fair statement, Mr. Reuter, that you do not know which person within the employment of K-Mart set up this display which is shown in Exhibits 2 and 3?
>
> A. That would be a fair statement.
>
> Q. All right. And you do not know how long prior to May 23rd, 1990, that this particular display was configured or set up in this particular configuration, do you?
>
> A. Prior to May 23rd?
>
> Q. That is correct, sir?
>
> A. No. I do not know.
>
> Q. All right. So you have nothing by which to determine how long this configuration as shown in Exhibits 2 and 3 were set up; whether it was a week, a month, three months prior to that date, do you?
>
> A. No.

Accordingly, Reuter is not a witness with firsthand knowledge of whether the end-cap in question was a corporate end-cap or an in-store end-cap. His proffer that the end-cap on the day in question was a corporate directed end-caps and would have been changed on Friday or Saturday and thus, the two

photographs could not accurately depict the end-cap as it existed at the time of the accident, is merely speculative and apparently based on his personal opinion. This testimony was not admissible because it is speculative and Reuter had no personal knowledge of the facts to which he testified to in the proffer. *Jones v. State*, 678 So. 2d 707, 710 (Miss. 1995). Consequently, the trial judge did not err as a matter of law in excluding Reuter's proffered testimony from the jury. This assignment of error is without merit.

### B. WHETHER THE TRIAL COURT ERRED IN FAILING TO ADMIT INTO EVIDENCE THE DEMONSTRATIVE EXHIBIT OF A RECONSTRUCTED PORTION OF THE END-CAP?

¶27. Kmart asserts that the trial court abused its discretion and committed reversible error in excluding Kmart's demonstrative evidence. As stated previously, the admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion. *Broadhead v. Bonita Lakes Mall, Ltd. Partnership*, 702 So. 2d 92, 102 (Miss. 1997) (*quoting Sumrall v. Mississippi Power Co.*, 693 So. 2d 359, 365 (Miss.1997)); *General Motors Corp. v. Jackson*, 636 So. 2d 310, 314 (Miss.1992); *Walker v. Graham*, 582 So. 2d 431, 432 (Miss.1991).

¶28. At trial, testimony was elicited from Hardy on direct examination, upon viewing the photograph taken by his investigator after his accident, that he was unable to detect any shelving material between the stacked layers of paint cans. To rebut the inference that there was no shelving material between the layers of paint cans, Kmart, through direct examination of its employee Reuter, presented evidence that Kmart's policy was to recess the stabilizing material between the cans for aesthetic reasons, and if properly constructed, the stabilizing material should not be visible. At that point in direct examination, Kmart attempted to introduce and construct through Reuter a portion of an end-cap paint can display in order to demonstrate how the shelving material is recessed between the layers of cans and why the shelving material was not visible.

¶29. Hardy's counsel objected on the ground that Kmart did not include the proffered exhibit in its initial response to a request for production of documents requesting production of a copy of all documentary or demonstrative evidence to be used at trial and that Kmart had failed to supplement its response. Hardy's counsel also objected on the ground that Kmart failed to show a substantial similarity between the reconstruction evidence and the actual end-cap in question and thus, the reconstruction evidence was inadmissible.

¶30. Kmart argues on appeal, as it did at trial, that the response to the discovery was complete at the time it was made and that the exhibit was being used for rebuttal purposes as the issue of visibility of the stabilizing material had only recently become significant. Kmart further argued that pursuant to Rule 26(f) of the Mississippi Rules of Civil Procedure, introduction of the demonstrative evidence was not a discovery violation. The trial judge sustained Hardy's objection based on the rules governing discovery. We agree with the trial court's determination.

¶31. This Court has developed strict discovery rules in order to avoid trial by ambush and to insure each party has a reasonable time to prepare for trial. It is committed to the discovery rules because they promote fair trials. Once an opponent requests discoverable material, an attorney has a duty to comply with the request regardless of the advantage a surprise may bring. *Harris v. General Host Corp.*, 503 So. 2d 795, 797 (Miss.1986); *Tolbert v. State*, 441 So. 2d 1374, 1375 (Miss.1983).

¶32. In the present case, counsel for Hardy filed a Request for Production of Documents to which Hardy

received the Answers to Request for Production propounded by Kmart on February 13, 1991. Request No. 5 read as follows:

> Request No. 5: Please attach a copy of each and every piece of documentary or demonstrative evidence which you intend to enter in to evidence at the trial of this cause of action.

> Response: Unknown at this time, however, Defendant reserves the right to supplement its response to this request.

Kmart failed to produce the demonstrative evidence it planned to display at trial and failed to supplement its responses.

¶33. Kmart argues that the demonstrative evidence was offered as evidence in rebuttal to testimony and evidence offered by Hardy, and in view of such testimony, was rebuttal evidence and was not discoverable. Thus, Kmart was not required to supplement their answers to Interrogatories.

¶34. There is no room for judicial discretion in this case. Kmart failed to produce the demonstrative in response to a specific request for production. Furthermore, Kmart stated in its answer to the request for production that it would supplement their responses to discovery. The case of **Williams v. Dixie Elec. Power Ass'n**, 514 So. 2d 332 (Miss.1987), controls the question presented. In **Williams**, this Court held the failure of an electric cooperative to respond to a request for production of all photographs (still or moving) and to seasonably tender surveillance videos to attorneys for Williams, the injured plaintiff, was a violation of discovery rules and constituted one of two reasons for reversal. In rejecting a contention that the surveillance films were offered to rebut the plaintiff's case and that rebuttal evidence is not discoverable, this Court stated:

> This Court has developed strict discovery rules in order to avoid trial by ambush and to insure each party has a reasonable time to prepare for trial. We are committed to the discovery rules because they promote fair trials. Once an opponent requests discoverable material, an attorney has a duty to comply with the request regardless of the advantage a surprise may bring. **Harris v. General Host Corp.**, 503 So. 2d 795, 797 (Miss.1986); **Tolbert v. State**, 441 So. 2d 1374, 1375 (Miss.1983). As is evident in this case, attorneys are reluctant to abide by discovery rules when they can profit by catching their opponents unaware.

> Dixie Electric tried to argue the surveillance films were offered to rebut the plaintiff's case and that rebuttal evidence is not discoverable. In **Harris** we rejected a similar contention because only some of an undisclosed witnesses' testimony rebutted the plaintiff's evidence. We added, if we accepted such a theory, "there would be no basis for the principle for ever requiring the defendant to disclose in advance the evidence it would offer at trial, for all such evidence in this sense is rebuttal." **Harris**, supra, at 797.

**Williams**, 514 So. 2d at 336. The Court further held that neither classifying the films as rebuttal nor continuing the surveillance after trial began changed Dixie Electric's duty to comply with discovery. **Id.** at 336-37.

¶35. In the present case, Hardy was never informed that the demonstrative evidence was going to be used, and counsel was not prepared to rebut the reconstruction of the end-cap display. Since Kmart failed to comply with discovery rules in a meaningful way, the trial judge was correct in refusing to permit the

demonstrative evidence to be presented before the jury and admitted into evidence. *State Highway Comm'n v. Jones*, 649 So. 2d 201, 204 (Miss. 1995). Clearly, the trial court did not abuse its discretion by excluding Kmart's evidence of a reconstructive portion of an end-cap. *Broadhead v. Bonita Lakes Mall, Ltd. Partnership*, 702 So. 2d 92, 102 (Miss. 1997) (*quoting* *Sumrall v. Mississippi Power Co.*, 693 So. 2d 359, 365 (Miss.1997)). This assignment of error is without merit.

### III. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, EVIDENCING BIAS AND PREJUDICE?

¶36. A trial judge's "findings of fact on conflicting evidence cannot be disturbed by this Court on appeal unless we can say with reasonable certainty that these findings were manifestly wrong and against the overwhelming weight of the evidence." *Richardson v. Riley*, 355 So. 2d 667, 668 (Miss.1978). See also *Puckett v. Stuckey*, 633 So. 2d 978, 982 (Miss.1993). The reviewing court must examine the entire record and must accept, "that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact." *Cotton v. McConnell*, 435 So.2d 683, 685 (Miss.1983) (*quoting* *Culbreath v. Johnson*, 427 So.2d 705, 707-708 (Miss.1983)). That there may be other evidence to the contrary is irrelevant.

¶37. The jury heard undisputed testimony that Hardy was an invitee on the premises of Kmart. The jury further heard testimony from Hardy that the two photographs accurately depicted the end-cap in question. Reuter testified that assuming the end-cap in the two photographs was the end-cap in question, then he would find that end-cap to be unsafe. Based on this testimony, the jury could reasonably infer that because of the unsafe display a paint can fell from it, landed next to the display and caused paint to spill. The testimony of Hardy, his brother, Reuter and Duprey all support the inference that the paint can on the floor came from the end-cap only a foot away. It was un-rebutted that Hardy's fall directly contributed to his injuries. Therefore, it was only logical for a jury to find that Kmart's failure to safely construct the display caused the paint can to fall to the ground and spill paint causing Hardy to fall.

¶38. Having examined all of the evidence in the light most favorable to Hardy and accepting all favorable credible evidence tending to support his case and all favorable inferences drawn therefrom as true, we conclude that a reasonable fair-minded jury could reach a verdict in favor of Hardy. Therefore, we find this assignment of error to be meritless.

### CONCLUSION

¶39. In the present case, the jury was presented with a factual question of breach and causation that were subject to different determinations. Because this determination was properly for the jury to make, this Court finds that the circuit court did not err in denying Kmart's Motion for JNOV or Motion for a New Trial. There was no abuse of discretion here and therefore, Kmart's first and third assignments of error are without merit.

¶40. The trial court correctly excluded the proferred testimony of Reuter according to M.R.E. 701. Reuter's testimony was speculative and lacked personal knowledge as to whether the display was a corporate or in-store end-cap. Furthermore, the trial court did not abuse its discretion in excluding evidence of reconstruction of the end-cap as Kmart violated discovery rules. Kmart's second assignment of error is

also found to be without merit.

¶41. Accordingly, the judgment upon the jury verdict entered by the Harrison County Circuit Court is affirmed.

¶42. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR.**