## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-CA-01205-SCT

*CYNTHIA RENA BORIS BOWER*

*v.*

*ROBERT FRANK BOWER*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/16/1998 |
| TRIAL JUDGE: | HON. THOMAS L. ZEBERT |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL J. MALOUF |
| | MICHAEL J. MALOUF, JR. |
| ATTORNEYS FOR APPELLEE: | WILLIAM R. WRIGHT |
| | STACEY P. STRACENER |
| | W. BENTON GREGG |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 04/06/2000 |
| MOTION FOR REHEARING FILED: | 4/20/2000; denied 6/1/2000 |
| MANDATE ISSUED: | 6/8/2000 |

**BEFORE PRATHER, C.J., SMITH AND WALLER, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This case is before the Court on appeal from the judgment of the Chancery Court of Rankin County, Mississippi by Cynthia Rena Boris Bower challenging the award of custody of her minor children to Robert Frank Bower.

## STATEMENT OF THE FACTS

¶2. Robert Bower and Cynthia B. Bower ("Cindy") were married on July 8, 1989. Two children were born to the marriage, Austin Lee Bower, born September 25, 1992, and Lauren Elizabeth Bower, born August 2, 1995. Robert, age 34, is employed by Renal Care Group, and Cindy, age 34, is a psychiatric nurse manager for a psychiatric practice. Although the testimony evidences some disputed facts, both parents have performed parental duties for their children and shared in their support and rearing.

¶3. Shortly after the birth of the second child, Cindy started having post-partum depression. At this time, the Bowers' marriage began having trouble as well which added to her depression. Feeling lonely and neglected by her husband, Cindy began seeing Dr. Mark Webb for depression in August, 1996.

¶4. In November 1996, Cindy's father put America Online on the Bowers' home computer to allow Cindy to communicate with family and friends in Virginia. Robert asserts this is when their marriage began to deteriorate. It is alleged that Cindy spent a tremendous amount of time logged on to the Internet where she developed relationships with two men. Cindy asserts that both she and Robert used this service to search for jobs and homes in Virginia.

¶5. In February of 1997, Cindy began counseling with Sharon Pugh, a marriage and family counselor, for her continued depression based on the recommendation of Dr. Mark Webb. Sharon Pugh recommended that Cindy move out of the marital home around March 28, 1997. Robert supported this move, and the couple agreed they would split custody of the children with Robert having the first weekend. During this separation, Cindy went to New Mexico for the Easter weekend to visit with Jeffery Sartain and his girlfriend in Albuquerque. Cindy met Sartain via the Internet. In April 1997, Cindy informed Robert she would be spending the weekend in Memphis. Robert hired a private investigator who saw Cindy and Jeffrey Sartain drive into Memphis and go straight to a Hampton Inn where they spent the weekend. Cindy denied that they were romantically involved or that anything inappropriate happened. Cindy testified Robert believed her that nothing happened and that he wished that they could work things out. At the end of April, 1997, Cindy attempted to reconcile their marriage by moving back into the marital home. She and Robert began counseling sessions with Janie Pillow.

¶6. In October 1997, Cindy informed Robert she thought the counseling was a waste of time. By this time, Cindy had begun a relationship on the Internet with Johnny Harris of Lynchburg, Virginia. Robert filed his Complaint for Divorce on October 21, 1997, based upon irreconcilable differences.

¶7. On January 5, 1998, Cindy filed for temporary relief for custody of the children. On January 15, 1998, Cindy moved to Virginia where she lived and worked at the time of the trial. On January 29, 1998, Robert filed his Amended Complaint for Divorce and Motion for Temporary Relief alleging adultery and seeking custody of the children. Both motions were heard on January 30,1998, with Cindy testifying that she had a sexual affair with Johnny Harris during December of 1997 and January of 1998 while Robert had taken the children to Virginia to visit with their parents. Cindy invited Harris to stay in the marital home where they were intimate. The chancellor entered his order on March 30, 1998, after consideration of the *Albright* factors.[1] Among other things, the temporary order also provided that "at no time will the custodial parent visit or have overnight visitation with a person of the opposite sex, to whom the custodial parent is not related by blood or marriage." Cindy filed her Answer to Amended Complaint on April 7, 1998, where she denied that she had committed adultery. Cindy continued to see Harris; she did not understand the chancellor's order to mean she could not see other men when the children were not present. At the trial of this matter, Cindy admitted her relationship with Harris while the children visited with Robert in Jackson.

¶8. The final hearing was set for April 9, 1998. The issues before the court were divorce on the ground of uncondoned adultery by Cindy, child custody and visitation, and child support. The chancellor's order stated in pertinent part:

> The morning after her abandonment of her family, Cindy boarded a flight bound for Albuquerque, New Mexico to be with a man she had "met" over the Internet but never in person. Cindy's decision to leave her family Easter weekend and spend that special time with a stranger constituted a clear indication of her priorities : stranger over children and unknown and possibly dangerous surroundings over the comforts of home and Easter weekend. This action demonstrates "unwillingness" rather than

"willingness" to parent.

Cindy drove to Memphis after telling her husband she just wanted to "get away". She spent three nights in a hotel room with the man from New Mexico. After the court entered its temporary order prohibiting Cindy from staying overnight with a man, she willingly disobeyed the court's order by spending the night with Johnny Harris and this defiant act took place even though Cindy knew this court would view her contemptuous behavior unfavorably when the decision to award custody was made. This deliberate violation of a court order demonstrates her unwillingness to parent; choices to engage in illicit relationships with strange men instead of spending time with her children clearly demonstrates her unwillingness to make the choice of her children over her hedonist inclinations.

¶9. Based on the evidence, the trial court awarded a divorce to Robert on the ground of uncondoned adultery. Further, the court ordered Robert to have care, custody and control of the minor children. Visitation with Cindy was awarded as follows: 1st and 3rd weekends-Friday from 6:00 p.m.; 45 continuous days in the summer; one week at Christmas; and four days every other year for Thanksgiving.

¶10. Specifically, Cindy appeals to this Court from this decision and raises the following issues for our review:

## STATEMENT OF ISSUES

**I. WHETHER THE CHANCELLOR ERRED IN PUNISHING CINDY FOR HER MARITAL MISCONDUCT BY DENYING HER CUSTODY.**

**II. WHETHER THE CHANCELLOR ERRED IN NOT CONSIDERING THE BEST INTEREST OF THE CHILDREN.**

**III. WHETHER THE CHANCELLOR ERRED IN THE APPLICATION OF THE ALBRIGHT FACTORS.**

**IV. WHETHER THE CHANCELLOR ERRED IN ADMITTING PAUL DAVEY AS EXPERT IN INTERNET ADDICTION AND INTERNET PORNOGRAPHY.**

**V. WHETHER THE CHANCELLOR ERRED IN ALLOWING THE INTERNET BILLING DOCUMENTS INTO EVIDENCE.**

**VI. WHETHER THE CHANCELLOR ERRED IN HIS FINDINGS OF FACTS.**

## STANDARD OF REVIEW

¶11. The standard of review employed by this Court in domestic relations cases is abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court was manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. *Sandlin v. Sandlin,* 699 So.2d 1198, 1203 (Miss. 1997). However, we will not hesitate to reverse should we find that a chancery court was manifestly wrong, abused its discretion, or applied an erroneous legal standard. *Lahmann v. Hallmon,* 722 So. 2d 614, 618 (Miss. 1998).

## DISCUSSION OF LAW

**I. WHETHER THE CHANCELLOR ERRED IN PUNISHING CINDY FOR HER MARITAL MISCONDUCT BY DENYING HER CUSTODY.**

**II. WHETHER THE CHANCELLOR ERRED IN NOT CONSIDERING THE BEST INTEREST OF THE CHILDREN.**

**III. WHETHER THE CHANCELLOR ERRED IN THE APPLICATION OF THE ALBRIGHT FACTORS.**

### Custody of the Minor Children

¶12. Cindy's assignments of error with regard to the chancellor's decision to deny her custody of the minor children to punish her rather than consider the best interest of the children and the lower court's erroneous legal standards and findings in the application of the *Albright* factors are addressed here. It is well-settled that in child custody cases, the primary and overriding consideration is the best interest of the child. *Albright v. Albright,* 437 So.2d 1003, 1005 (Miss. 1983). The *Albright* factors, now the standard for awarding child custody, were set out by the Court as follows:

> [1] Age, health, and sex of the child; [2] a determination of the parent that has had the continuity of care prior to the separation; [3] which has the best parenting skills and which has the willingness and capacity to provide primary child care; [4] the employment of the parent and responsibilities of that employment; [5] physical and mental health and age of the parents; [6] emotional ties of parent and child; [7] moral fitness of parents; [8] the home, school, and community record of the child; [9] the preference of the child at the age sufficient to express a preference by law; [10] stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.

*Albright,* 437 So. 2d at 1005.

¶13. After applying the *Albright* factors, the chancellor awarded custody to Robert. Cindy contends that the chancellor erred in granting Robert custody of the children. This Court, however is "bound by the chancellor's findings unless it can be said with a reasonable certainty that those findings were manifestly wrong and against the overwhelming weight of the evidence." *Carr v. Carr,* 480 So.2d 1120, 1123-24 (Miss. 1985). Cindy questions the chancellor's ruling based on the following factors which she believes weigh in her favor: (1) age and health and sex of the children, (2) continuity of care prior to separation, and (9) the preference of the child at the age sufficient to express a preference by law. Additionally, she argues the chancellor was punishing her for her adultery in his findings of fact and conclusion of law concerning these factors: (3) which has the best parenting skills and willingness and capacity to provide primary child care; (5) physical and mental health and age of the parents, (8) the home, school and community record of the child; and (10) stability of home environment and employment of each parent.

¶14. The chancellor made an on-the-record review of each factor. Since this is the initial and perhaps most significant issue that the parties present to us, we will review each factor in some detail.

### A. Age, health and sex of the child.

¶15. Cindy contends that it was error not to consider this factor. The chancellor acknowledged that the children were a five-year-old boy and two-year-old girl, but failed to give a preference to either party."In all

cases where any child is of such tender age as to require the mother's care for its physical welfare, it should be awarded to her custody, at least until it reaches that age and maturity where it can be equally well cared for by other persons." Amis, Divorce and Separation in Mississippi § 8.05, at 217 (1957) A child of 7 has been held by this Court to be long past the age prior to which it requires attention of such character from the mother. *Torrence v. Moore,* 455 So. 2d 778, 780 (Miss. 1984).

¶16. Cindy testified that Austin has had tubes and continues to have chronic and ongoing ear infections, and that Lauren has had sinus surgery, been diagnosed with asthma, and has a prescribed nebulizer machine. Being a registered nurse, she is more qualified to meet the children's medical needs. Although the tender-years doctrine is not solely determinative of custody, this factor was viable and favored Cindy.

### B. Continuity of care prior to separation.

¶17. Cindy stated she was the primary care giver for the children **prior** to the separation and that the chancellor's analysis considered care **since** the separation. Cindy stresses this factor should be favored for her because this factor considers the continuity of care **prior** to the separation. The chancellor noted, however, that both parents had cared for the children by feeding, bathing, dressing, as well as getting them to bed, and dropping them off and picking them up at day care.

### C. Preference of the child at the age sufficient to express such a preference by law.

¶18. Cindy argues it was error for the chancellor to state this factor in favor of Robert. According to her, the children being five and two are too young to assert a preference, and the chancellor applied an erroneous legal standard in finding that Robert's home environment and employment are much more stable than Cindy's.

¶19. Robert correctly notes however, that there is a typographical error in the order and that the chancellor did find that the children could not express a preference by law due to their ages. The number and heading for factor number 10, stability of the home and employment of each parent, was inadvertently not typed in, so there was no error in the chancellor's analysis of this factor.

### D. Which parent has the best parenting skills and willingness and capacity to provide primary care.

¶20. The chancellor found both Robert and Cindy have provided primary care to the children. However, he noted Cindy spent much of her time on the Internet and when she was absent from the home this care was provided by Robert.

¶21. Cindy counters by saying the chancellor did not consider that she has provided continued care for the last five years of the marriage and that she used the Internet only after the children had been bathed and gone to bed. According to Cindy, Robert came home and excluded her from his life; his desertion led to her use of the Internet. She maintains that the time she was not at the marital home was on the advice of her doctor and that it was in the best interest of the children not to move them with her. Cindy also asserts that the chancellor ignored the fact that Robert spent several hours a night watching television and that he regularly drinks beer and liquor and allows the children to take sips of his alcoholic beverages.

¶22. Robert counters this argument by saying the court was satisfied from the testimony presented that his drinking habits did not adversely affect his ability to care for the children. He testified he drinks beer or

bourbon mixed with Diet coke on occasion, but since the separation his drinking had definitely decreased.

### E. Employment of the parent and responsibility of that employment.

¶23. Cindy is a registered nurse with a work schedule from 8:30-5:00 Monday through Friday, never travels out of town, and never works on the weekends. The children's daycare is on the job site and her parent's home is near her employment, but the chancellor weighted this factor in favor of Robert who travels in his job.

¶24. Robert testified that he rarely travels overnight for his job because most of his job sites are within a few hours drive from his home and he has been assured that his work hours can be flexible in order to accommodate being a single father.

### F. Physical and mental health of the parties.

¶25. Cindy disagrees with the court's weighing this factor in favor of Robert by citing she has been treated for depression since August 1996, and had taken prescription drugs for such problems. The court stated she has spent enormous amounts of time on the Internet talking to strange men and has exhibited unstable behavior of meeting men and beginning physical relationships with those she has met on the Internet. Cindy's testimony was her depression was due primarily to her marriage and living conditions as opposed to a chemical imbalance. She agues that in today's society, meeting people over the Internet is viewed as an option to meeting people at church, work, or through a dating service, and, although it is a new innovative tool in today's society, its use is not an indication of unstable behavior.

¶26. Cindy states the chancellor did not consider Robert's drinking and not paying bills on time.

### G. Home, School, and Community record of the child.

¶27. The court noted the children have lived in Brandon all of their lives, have attended day care, and have developed friends. Cindy disagrees with this finding because the children are five and two and probably would not have a preference for staying in Brandon. The court failed to acknowledge that Robert and Cindy had many discussions about the family moving to Virginia because the schools were better, and the children would be around their grandparents and other family members in Virginia. Cindy testified that Robert would give her custody of the children if she would live in a certain school district in the west side of Lynchburg. However, Robert testified it would be in the best interest of the children to be with him.

### H. Other relevant factors.

¶28. The chancellor focused on the several relatives in Jackson the children could have a relationship with instead of their parents, siblings and cousins who live in Virginia. Cindy contends one of the relatives in Jackson smokes marijuana on a regular basis. Therefore, they had agreed not to let the children visit them and there is minimum contact with the other relatives.

¶29. Cindy stresses the chancellor punished her for taking trips to Albuquerque and Memphis and because of her adulterous affair when the children were with Robert. While it is true that an adulterous relationship is not to be used as a sanction against a guilty parent in awarding custody of children, it is a factor to consider when that conduct manifests itself into the moral fitness of a parent to raise a child. *Carr v. Carr,* 480 So.2d at 1121. The polestar consideration in an original custody determination is the best interest and

welfare of the minor child. *Id.*

¶30. This Court has made plain that, despite the criminal nature of these acts, cohabitation is relevant only to the extent it can be shown to affect the child adversely. *Cheek v. Ricker,* 431 So.2d 1139,1144 (Miss. 1983).

¶31. However, this Court does not reevaluate the evidence, retest the credibility of witnesses, nor otherwise act as a second fact-finder. *Wright v. Stanley,* 700 So. 2d 274, 280 (Miss. 1997) Unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard, we will affirm. *Id.* If there is substantial evidence in the record to support the chancellor's findings of fact, no matter what contrary evidence there may also be, we will uphold the chancellor. *Id.*

¶32. In reviewing the record in the comprehensive opinion rendered by the chancellor from the bench at the conclusion of this trial, we are satisfied that the issues raised are not of sufficient gravity to raise a legitimate concern that the chancellor abused his discretion when he failed to decide that these matters tipped the scale in Cindy's favor on the custody issue. We are of the opinion that the chancellor's detailed analysis of the evidence presented to him and the weight he ascribed to various evidentiary factors in resolving the issue of custody represents a reflective study of the difficult question presented to him for resolution.

¶33. Having so concluded, we find that any attempt to upset the chancellor's decision would be merely to substitute the collective judgment of this Court for that of the chancellor. That is not the business of an appellate court, and we decline to do so. *Torrence,* 455 So.2d at 780.

## IV. WHETHER THE CHANCELLOR ERRED IN ADMITTING PAUL DAVEY AS AN EXPERT IN INTERNET ADDITION AND INTERNET PORNOGRAPHY.

¶34. Over strenuous objections by Cindy, the chancellor allowed Paul Davey("Davey"), a licensed professional counselor, to testify in the area of Internet addiction and Internet pornography. Cindy contends the chancellor's findings of fact and application of the *Albright* factors were congested with references to Internet addiction and were obviously influenced by Davey's testimony. As such, the chancellor erred in admitting Davey as an expert in this matter.

¶35. Our standard of review for the admission of or refusal to admit evidence is well settled. "'[A]dmission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion.'" *K-Mart Corp. v. Hardy,* 735 So.2d 975, 983 (Miss. 1999).

¶36. In the present case, testimony was elicited from Davey on voir dire examination. After the direct examination, Cindy's counsel objected to allowing Davey to testify as an expert. The court ruled,"whether he qualifies as an expert under 702 or not, it is this court's opinion that certainly he is entitled to give testimony with reference to layman's type testimony because he knows more than the average individual about it." "If he was classified as an expert, I would lay what credence that I felt was necessary given the fact of 702's position; I am going to let him testify." Davey's testimony was in the form of lay opinion, and thus subject to Mississippi Rule of Evidence 701 which states:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.

(emphasis added.) *See also* **K-Mart Corp. v. Hardy**, 735 So. 2d at 984.

¶37. Moreover, the comment to Rule 701, explains the two-part test for the admissibility of lay witness opinion testimony. First, the testimony must be of first-hand knowledge or observation. Second, the witness's opinion must be helpful in resolving the issues. Mississippi Rule of Evidence 701 cmt. The first prong of the test is in accordance with M.R.E. 602 requiring that a witness who testifies about a certain matter have personal knowledge of that matter. M.R.E. 602 states that it is subject to the provisions of Rule 703. M.R.E. 703 allows for the admissibility of expert testimony where the expert bases an opinion or inference on facts or data made known to the expert other than by his personal observation. However, because Davey was never qualified as an expert in either Internet pornography nor Internet addiction, but only as a lay witness, and because he did not have personal knowledge regarding Cindy's computer usage as required by M.R.E. 701 and M.R.E. 602, the testimony was inadmissible.

¶38. Nevertheless, for a case to be reversed on the admission of evidence, "it must result in prejudice and harm or adversely affect a substantial right of a party." **K-Mart Corp. v. Hardy**, 735 So. 2d at 983 (citing *Hansen v. State*, 592 So. 2d 114 (Miss. 1991)). "To apply the harmless error analysis ... this Court must determine whether the weight of the evidence against [the defendant] is sufficient to outweigh the harm done by allowing admission of [the] evidence." **Fuselier v. State**, 702 So. 2d 388, 391 (Miss. 1997). Here, the contested testimony constitutes harmless error because of the overwhelming evidence presented that showed the Bowers, particularly Cindy, used the Internet most evenings. Robert and Cindy testified regarding Cindy's many America Online user names and the amounts of time which she spent on the Internet. Therefore, the admission of Davey's testimony would have not affected the outcome of the trial.

## V. WHETHER THE CHANCELLOR ERRED IN ALLOWING THE INTERNET BILLING DOCUMENTS INTO EVIDENCE.

¶39. Cindy asserts that the trial court abused its discretion and committed reversible error by holding her use of the Internet was excessive and unusual based upon unauthenticated hearsay documents. Robert introduced into evidence America Online billing documents and a summary titled "Summary of Time Cindy Bower is on the Internet" as an exhibit.

¶40. As stated previously, the admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion. **K-Mart Corp.** 735 So.2d at 975.

¶41. Robert asserts that these documents were admissible under M.R.E. 803(6) because the records were kept in the ordinary course of business by America Online and the records were properly authenticated by Robert's testimony. Moreover, the chancellor admitted the documents with the name of the summary changed from "Summary of Time Cindy Bower is on the Internet" to "Summary of Time on the Bower Account". Cindy continued her objection on the basis of hearsay, authentication and the best evidence rules. After much elaboration between the attorneys and the chancellor, the trial court ruled, "it was the opinion of the court that the document was admissible evidence and that it went to the weight of the credibility of the witnesses testifying to it and as such the document would be admitted." We disagree with the trial court's determination.

¶42. Rule 803(6) of the Mississippi Rules of Evidence provides:

(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in

any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method or circumstances or preparation indicate lack of trustworthiness.

(emphasis added).

¶43. Rule 901 of the Mississippi Rules of Evidence provides:

(a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what it proponents claims.
(b) Illustrations. By way of illustration only, not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
(1) Testimony of Witness With Knowledge. Testimony that a matter is what it is claimed to be.

(emphasis added).

¶44. This Court has explained that a witness was qualified to authenticate the business bank records because "he prepared the summary with the help of his bookkeeper, and his testimony reveals that he was a witness with knowledge that the summary was what it claimed to be." *Wells v. State*, 604 So.2d 271, 275 (Miss.1992). "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). "Hearsay evidence is inadmissible unless it falls within one of the known exceptions." *Clark v. State*, 693 So.2d 927, 931 (Miss.1997). This Court has held that "only when hearsay evidence qualifies under a 'firmly rooted hearsay exception' can it be admitted over a right to confrontation objection by the defendant." *Gossett v. State*, 660 So.2d 1285, 1296 (Miss.1995).

¶45. As Cindy correctly submits, Robert was not a qualified witness. He was not involved in the preparation of the Internet documents, he did not work directly for American Online, nor could he testify to the accuracy of the documents. Therefore, the Internet records were not properly authenticated.

¶46. Nevertheless, as stated previously, the court's admission of the documents would be harmless. In order for a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party. *K-Mart Corp. v. Hardy*, 735 So.2d at 983. There was testimony from both Robert and Cindy regarding Cindy's many American Online names and the amounts of time which she spent on the Internet. Robert testified he spent approximately five hours on the Internet under Cindy's user name and of the average fifty-three hours per month on the Internet over the past ten months, Cindy was responsible for the charges to the Internet service. As such, the American Online billing record provided only repetitive evidence of the alleged amount of time spent using the Internet. Therefore, the introduction of such evidence was harmless error, as it did not adversely affect any substantial right of Cindy.

## VI. WHETHER THE CHANCELLOR ERRED IN HIS FINDINGS OF FACT.

¶47. Cindy urges this Court to reverse the ruling of the chancellor because of erroneous conclusions or

misstatements in the findings of fact. Cindy has cited no law, from this jurisdiction or any other, which supports the proposition that there are erroneous conclusions in this case. This Court has stated that it need not consider argument which is not supported by authority. *Hankins v. Hankins*, 729 So.2d 1283, 1286 (Miss. 1999). *See also* **Grey v. Grey,** 638 So.2d 488, 491 (Miss.1994). Accordingly, it is not necessary to consider this issue.

¶48. Notwithstanding Cindy's failure to cite authority for her argument, this Court has held that given the standard of review of a chancery court's findings of fact, particularly in the areas of divorce, alimony and child support, we will not disturb the trial court's findings on appeal unless the findings are manifestly in error. *Lahmann*, 722 So.2d at 618. It is evident from the record that the chancellor made extensive findings of fact which are based upon substantial evidence in the record. Therefore, we find that this issue is without merit.

## CONCLUSION

¶49. This Court will not disturb the findings of a chancellor, be they of ultimate fact or of evidentiary fact, when supported by substantial evidence in the record. The chancellor's decision to award custody to Robert Bower is supported by substantial evidence. Therefore, finding no reversible error, we affirm the judgment of the Chancery Court of Rankin County.

¶50. **AFFIRMED**.

> **PRATHER, C.J., PITTMAN AND BANKS, P.JJ., MILLS AND WALLER, JJ., CONCUR. McRAE AND COBB, JJ.,CONCUR IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**

1. The temporary order gave Cindy physical custody of the children and granted a thirty-day visitation period to Robert starting March 1, 1998, and ending March 31, 1998.