989 So.2d 408 (2008)
In the Matter of the Dissolution of the Marriage Of Ora Jackson WEEKS, Appellant,
v.
Montriel WEEKS, Sr., Appellee.
No. 2006-CA-01265-COA.
Court of Appeals of Mississippi.
April 29, 2008.
Rehearing Denied August 26, 2008.
*409 Alsee McDaniel, Indianola, attorney for appellant.
Bennie L. Richard, Greenville, attorney for appellee.
Before KING, C.J., CHANDLER, and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. On March 13, 2006, the Chancery Court of Sunflower County entered an order granting a divorce to Ora Jackson Weeks and Montriel Weeks, Sr., and giving Montriel custody of the couple's two minor children. Ora was granted weekend and holiday visitation and was ordered to pay child support in the amount of $300 per month. Aggrieved, Ora appeals the chancery court's decision.

FACTS
¶ 2. Ora and Montriel were married on March 18, 2004. There were two children born during the relationship between Ora and Montriela son, Montriel, Jr., and a daughter, Maquirria. Ora and Montriel separated on June 30, 2005. On October 19, 2005, they filed a joint petition for divorce based on irreconcilable differences. Ora and Montriel left the decisions regarding custody, visitation, and child support to the chancery court.
¶ 3. At the time of their separation, Ora was granted temporary custody of the couple's children. Montriel was granted weekend visitation and ordered to pay child support. Montriel claims that shortly after the separation, Ora allowed her boyfriend, Tremaine Earvin, to move into her apartment, which she shared, occasionally, with the children. Ora and Montriel's children actually spent most nights with Ora's mother. During the trial, Ora denied that she and Earvin had a romantic relationship or that he lived in the apartment. Ora had initially told everyone that Earvin was her newly discovered half-brother, and she had even brought him *410 into the marital home for social visits prior to the separation.
¶ 4. Montriel lived with his parents during the separation and the divorce proceeding and attended Mississippi Valley State University. His parents had room for Montriel and the children in their home, and Montriel's parents owned a daycare facility, which the children could attend while Montriel attended classes. Although Montriel did not pay any child support during the separation, he faithfully visited with both of his children each weekend he was allowed visitation.
¶ 5. At some point during the pending divorce, Ora filed a domestic violence complaint against Earvin. The incident took place when Maquirria was in the home. Montriel claimed that the children were afraid of Ora's boyfriend, and Montriel feared for the children's safety. Montriel, Jr., claimed that the boyfriend had whipped him. Montriel noted that his daughter's demeanor would change when the boyfriend was around, indicating that she was also afraid of him.
¶ 6. A trial was held on March 7-8, 2006, in Sunflower County Chancery Court. Montriel was granted physical custody of the two children. Ora was granted visitation and ordered to pay child support in the amount of $300 per month. Ora's child support obligation was set-off by the amount of Montriel's support arrearage of $2,310. The chancellor also ordered Ora to refrain from having any men who were not blood relatives in her home when she had the children visiting with her.
¶ 7. On appeal, Ora claims that the chancellor placed too much emphasis on the moral fitness factor in her Albright analysis, focusing too heavily on her relationship with Earvin. Essentially, Ora feels the chancellor punished her for having an affair and relationship before her divorce was finalized. Ora also claims that the chancellor erred in admitting and considering the prior convictions and arrests of Earvin, her live-in boyfriend.

DISCUSSION

I. Whether the chancellor erred in her application of the Albright factors.
¶ 8. Ora asserts that the chancellor put too much weight on the moral fitness factor in her Albright analysis. She argues that the chancellor disregarded evidence presented under remaining factors, thereby impermissibly sanctioning her for adultery. Specifically, Ora claims that she presented evidence Montriel had been physically violent toward her, and he even lost his job at Dollar General for workplace violence against her. She claims that he broke out windows in her apartment, while the children were present. She claims that he stole their furniture from the apartment and he harassed and verbally abused her. She also claims that he reported an unsubstantiated complaint of child abuse against her to the Sunflower County Department of Human Services.

STANDARD OF REVIEW
¶ 9. "A chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Sanderson v. Sanderson, 824 So.2d 623, 625-26(¶ 8) (Miss.2002) (citations omitted). The Mississippi Supreme Court has held that it is unacceptable for chancellors to use custody decisions as a way to punish a parent for her indiscretions. Lackey v. Fuller, 755 So.2d 1083, 1087(¶ 20) (Miss.2000) (citing Phillips *411 v. Phillips, 555 So.2d 698, 701 (Miss. 1989)). Additionally, "[t]he polestar consideration in custody matters is the best interest of the child, not marital fault." Id. (quoting Rushing v. Rushing, 724 So.2d 911, 916(¶ 24) (Miss.1998)). Furthermore, this Court "will affirm the [child custody] decree if the record shows any ground upon which the decision may be justified. . . We will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interests of the child." Mosley v. Mosley, 784 So.2d 901, 905-06(¶ 15) (Miss.2001) (quoting Yates v. Yates, 284 So.2d 46, 47 (Miss.1973)).
¶ 10. Chancellors must consider a number of factors in determining child custody: (1) age, health, and sex of the child; (2) which parent had continuity of care prior to the separation; (3) which parent has better parenting skills and the willingness and capacity to provide primary child care; (4) the employment responsibilities of the parents; (5) the physical and mental health and age of the parents; (6) the moral fitness of the parents; (7) the emotional ties of the parents and children; (8) the home, school, and community records of the children; (9) the preference of a child at the age sufficient to express a preference by law; (10) the stability of the home environment and employment of each parent; and (11) the other relevant factors in the parent-child relationship. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 11. After applying the Albright factors, the chancellor determined that Montriel "could provide a more stable and healthy home environment, including household routine, composition of the household and the stability of relationships within the home and with the other household members." The chancellor, in her findings of fact and conclusions of law listed each of the Albright factors, then stated that she had carefully considered the applicable factors and determined that Montriel was the better parent.
¶ 12. Although the chancellor did not discuss each of the Albright factors at length, it is clear from the record that she considered each applicable factor. Further, there is evidence in the record related to each factor that supports her ruling. Ora complains that the chancellor's analysis ignored evidence favorable to her. While it is necessary for the chancellor to make specific findings of fact under each applicable Albright factor, it is not necessary for her to state who prevails under each factor. Alderson v. Alderson, 810 So.2d 627, 629 (¶¶ 5-6) (Miss.Ct.App.2002) (citing Powell v. Ayars, 792 So.2d 240, 244-45(¶ 11) (Miss.2001)). Particularly, Ora finds error with the chancellor's analysis of four of the Albright factors: (1) the employment of the parties, (2) the willingness and capacity of the parties to provide primary child care, (3) the stability of the home environment, and (4) the moral fitness of the parents.

1. Employment Responsibilities of the Parents
¶ 13. Ora claims that the chancellor, in stating that she would not penalize Montriel for not having a job, sanctioned her for adultery while rewarding Montriel for being unemployed. Ora claims that the chancellor ignored testimony related to Montriel losing his job at Dollar General, where they both worked, for attacking her in the Dollar General parking lot when she arrived at work. It is clear from the record that the chancellor considered this factor in her analysis. The chancellor was obviously aware that Montriel was unemployed. The chancellor found that Montriel was working to complete his college education and making efforts to find employment *412 upon graduation. Ora's argument that the chancellor disregarded evidence under this factor is without merit.

2. Willingness and Capacity of the Parties to Provide Primary Child Care
¶ 14. The chancellor did not address this factor separately in her findings of fact and conclusions of law, but she did address the issues. She found that it was in the best interest of the children to be reared together, rather than Montriel, Jr., living with his grandmother and Maquirria living with Ora sometimes and with her grandmother sometimes. The chancellor considered that Montriel's family owned a daycare facility, which the children could attend while Montriel attended school.

3. Stability of the Home Environment
¶ 15. The chancellor spent considerable time addressing this factor in her analysis. She stated in her ruling: "These two young children desire and deserve to be safe and live in a stable environment[,] and I do not think they have been living in a safe nor a stable environment with Mrs. Weeks. But in fact I don't think they've been staying with Mrs. Weeks that much. . . . [t]he son lives with the grandmother.. . ." The chancellor did focus on Earvin during her analysis of this factor, finding that Ora's relationship with Earvin and her home environment were volatile. The chancellor found that Montriel could provide a more stable home environment, and the existence of extended family to help him with the children and the availability of day care weighed in his favor.

4. Moral Fitness of the Parents
¶ 16. Ora argues that the chancellor disregarded evidence that Montriel was not morally fit to have custody of the children. She points to evidence presented at trial that Montriel had attacked her at her place of work, verbally abused her, broke a window in her apartment, and removed furniture from the apartment. The chancellor's discussion focused on the psychological harm that Ora's relationship with Earvin had on the children; however, it is clear that she considered other evidence presented. She stated in her conclusion that "the court does not consider either party to be model parents, after considering all credible evidence presented at trial, the court determines the best interest of the minor children . . . would be served by the grant of custody to Mr. Weeks." The chancellor further stated that the children had been in a potentially dangerous environment with their mother and her violent boyfriend.
¶ 17. The chancellor found that Montriel was more capable of providing a stable and healthy home environment. Ora's assertion that the chancellor disregarded evidence is without merit. A determination of the moral fitness of a parent includes allegations of adultery. Brekeen v. Brekeen, 880 So.2d 280, 284(¶ 6) (Miss.2004). In some cases, one parent's adultery may have an unhealthy influence on a child; in others, it may have no effect at all. Id. In the instant case, the chancellor felt that Ora's adultery, specifically, her cohabitation with a violent man, whom she had held out to be her brother, had a negative impact on the children. We find no indication that the chancellor placed too great an emphasis on Ora's adultery.
¶ 18. The Mississippi Supreme Court has held that when the chancellor's findings of fact are supported by substantial evidence in the record, even when contrary evidence exists, we will uphold the chancellor's decision. Bower v. Bower, 758 So.2d 405, 412(¶ 31) (Miss.2000). Because we find evidence in the record to support the chancellor's analysis related to the above *413 factors, we find no error with the chancellor's determination. This assignment of error is without merit.

II. Whether the chancellor erred in admitting the list of prior arrests and charges against Tremaine Earvin and considering them in applying the Albright factors.
¶ 19. Over Ora's objection at trial, the chancellor allowed a report of Earvin's prior criminal history into evidence. This report, purportedly generated by the Indianola Police Department, listed any complaints made by or against Earvin to the Indianola Police Department. Ora claims that the "priors report" was not properly authenticated as required by Mississippi Rule of Evidence 901, and it should have been excluded. Further, Ora claims, the report does not meet the requirements of a self-authenticated document under Mississippi Rule of Evidence 902.
¶ 20. Mississippi Rule of Evidence 901(a) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The report was not printed on any official letterhead of the police department and bore no other seal or attestation that it was an official document. Officer Bennie Milton, who testified regarding the report of prior incidents, had not generated it and was not certain who had generated it or how the records were kept. Officer Milton did testify that the report was consistent with other prior incident reports she had seen. Ora claims that the chancellor relied on this report when making her custody decision.
¶ 21. "Admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion." Bower, 758 So.2d at 413(¶ 35) (quoting K-Mart Corp. v. Hardy, 735 So.2d 975, 983(¶ 21) (Miss. 1999)). For this Court to reverse a trial court's decision based on the admission of evidence, "it must result in prejudice and harm or adversely affect a substantial right of a party." Id. at (¶ 38) (quoting Hardy, 735 So.2d at 983(¶ 21)).
¶ 22. Montriel argues that the admission of this evidence did not affect the outcome of the court's decision because there is sufficient evidence in the record to support the chancellor's finding without the improper evidence. We agree. Though the report should not have been admitted into evidence, its admission constitutes harmless error in this case. Even without the prior incident reports on Earvin, the chancellor had evidence regarding Earvin's violent behavior and the environment in Ora's home. Ora testified herself that Earvin struck her on one occasion. Officer Milton testified that she prepared the police report related to that particular domestic violence incident, and Ora reported the incident. Other evidence at trial revealed that Earvin and Ora were living together, and the children preferred to be with their grandmother rather than with their own mother.
¶ 23. We find the admission of the prior incident report regarding Earvin to be harmless error.

CONCLUSION
¶ 24. There is substantial evidence in the record to support the chancellor's award of custody to Montriel; thus, we cannot disturb the chancellor's findings of fact. Because we find no reversible error in this case, we affirm the judgment of the chancery court.
¶ 25. THE JUDGMENT OF THE CHANCERY COURT OF SUNFLOWER COUNTY IS AFFIRMED. ALL COSTS *414 OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.