# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00551-COA

**ANGELA MARIE MYERS**                                              **APPELLANT**

**v.**

**THOMAS LAVON MYERS**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/26/2017 |
| TRIAL JUDGE: | HON. FRANKLIN C. MCKENZIE JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | BARRON CRUZ GRAY |
| ATTORNEYS FOR APPELLEE: | RISHER GRANTHAM CAVES TERRY L. CAVES |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 10/09/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., GREENLEE AND TINDELL, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     Angela Myers appeals the Jones County Chancery Court's award of the physical custody of her nine-year-old son, STM, and four-year-old daughter, AEM, to her ex-husband, Thomas "Tommy" Myers.[1]  On appeal, Angela argues the chancellor erred in his *Albright*[2] analysis.  Finding no manifest error in the chancellor's judgment, we affirm.

### BACKGROUND

---

[1] To protect the identity of Angela and Tommy's minor children, we substitute initials for their names.

[2] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

¶2.     On April 21, 2016, Tommy filed for divorce on the ground of adultery and requested custody of their two children. A bifurcated trial on the merits was held on November 16, 2016. Following trial, the court granted Tommy a divorce on the ground of adultery. A second trial was held on the remaining issues before the court. On January 5, 2017, the chancellor entered his findings of fact and conclusions of law, awarding Tommy physical custody of the two children and ordering Angela to pay Tommy child support.

¶3.     On January 26, 2017, the chancellor entered his final judgment granting Tommy a divorce from Angela on the ground of adultery. Tommy was awarded full physical custody, with Angela being awarded visitation rights and both parties being awarded joint legal custody. On February 6, 2017, Angela filed a motion for a new trial or to amend the judgment under Rule 59 of the Mississippi Rules of Civil Procedure.[3] The chancellor denied the motion on March 14, 2017. Angela timely appealed.

**STANDARD OF REVIEW**

¶4.     Our standard of review concerning child custody is limited. *C.W.L. v. R.A.*, 919 So. 2d 267, 270 (¶8) (Miss. Ct. App. 2005). On appeal, we will only reverse a chancellor's child-custody decision when the chancellor is manifestly wrong or applied an erroneous legal standard. We will affirm a chancellor's factual findings when they are supported by substantial evidence in the record. *Lowrey v. Lowrey*, 25 So. 3d 274, 294-95 (¶51) (Miss. 2009). However, "[a] chancellor's conclusions of law are reviewed de novo." *Id.* at 285 (¶26).

---

[3] *See* M.R.C.P. 59(a), (e).

**DISCUSSION**

**The Chancellor's *Albright* Findings**

¶5.     On appeal, Angela argues the chancellor's decision resulted from an erroneous analysis of the *Albright* factors.

¶6.     The polestar consideration in all child custody cases is the best interest and welfare of the children.  *D.M. v. D.R.*, 62 So. 3d 920, 923 (¶11) (Miss. 2011).  In determining the child's best interest, the chancellor considers the following factors:

>   (1) age, health, and sex of the child;
>
>   (2) a determination of the parent that has had the continuity of care prior to the separation;
>
>   (3) which has the best parenting skills and which has the willingness and capacity to provide primary child care;
>
>   (4) the employment of the parent and responsibilities of that employment;
>
>   (5) physical and mental health and age of the parents;
>
>   (6) emotional ties of parent and child;
>
>   (7) moral fitness of the parents;
>
>   (8) the home, school and community record of the child;
>
>   (9) the preference of the child at the age sufficient to express a preference by law;
>
>   (10) stability of home environment and employment of each parent and other factors relevant to the parent-child relationship.

*Lee v. Lee*, 798 So. 2d 1284, 1288 (¶15) (Miss. 2001) (citing *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983)).

¶7. The chancellor is required to address each *Albright* factor that applies to the case before him. *Powell v. Ayars*, 792 So. 2d 240, 244-45 (¶¶10-11) (Miss. 2001). However, he need not decide that every factor favors one parent over the other. *See Weeks v. Weeks*, 989 So. 2d 408, 411 (¶12) (Miss. Ct. App. 2008). "[T]he *Albright* factors exist to ensure the chancellor considers all the relevant facts before [he] reaches a decision. All the factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way [he] sees fit in determining where the child's best interest lies." *Blakely v. Blakely*, 88 So. 3d 798, 803 (¶17) (Miss. Ct. App. 2012) (quoting *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003) (internal quotation marks omitted)).

¶8. Angela makes a number of factor-specific challenges to the chancellor's *Albright* findings. We address her arguments below.

1. Age, Health, and Sex of the Children

¶9. The chancellor noted that STM has ADHD and dyslexia and is borderline autistic. The chancellor stated that ordinarily the health of the children would be neutral, but in this case, the factor favored Tommy due to his and STM's close emotional ties. Angela argues the chancellor erred in his finding because he used another factor to justify his conclusion and ignored evidence of her training and experience in teaching children with dyslexia.

¶10. It is true Angela has special training in dyslexia therapy and accepted a position teaching children with dyslexia. However, she did not offer evidence showing how she utilized her training to support STM's health needs beyond coordinating STM's school accommodations. Tommy testified that in order to help STM with his disabilities, he and

4

STM read books and looked through comic books together. And Tommy said that he helped STM with his homework, including STM's reading assignments, which he and STM read and worked through together. Overall, the testimony presented at trial reflected that Tommy is a patient and attentive father. Conversely, the evidence showed that Angela loses her patience with the children. The chancellor did not err by finding that, in light of STM's disabilities, his developmental health was aided by his close emotional ties with his father. The chancellor properly found this factor to favor Tommy, and the finding is supported by substantial evidence.

### 2. Continuity of Care

¶11. The chancellor separately delineated this factor in his findings of fact and found it weighed in Tommy's favor "for [the] reasons set forth above." Angela contends the chancellor's reasoning was ambiguous and that the chancellor should have specifically discussed the evidence relevant to this factor.

¶12. It is clear from the chancellor's express enumeration of this factor that the chancellor considered it. Further, in the chancellor's general findings of fact, he found that although Angela was the children's primary caregiver when they were infants, Tommy took on more parenting responsibilities when the children became toddlers. Tommy cooked ninety percent of the family meals, bathed the children, put them to bed, did the household laundry, and was responsible for disciplining the children. Additionally, Tommy continues to reside in the children's childhood home. We find no manifest error in the chancellor's finding that this factor favored Tommy.

### 3. Parenting Skills

¶13. The chancellor found this factor favored Tommy, noting that Angela was sometimes impatient with the children, destroyed property during emotional outbursts, and used profanity in the children's presence. Angela suggests the chancellor placed too much weight on testimony concerning her negative attributes. She specifically claims the chancellor ignored evidence of her good parenting skills, including her efforts to ensure STM received educational support for his ADHD and dyslexia. Her challenges are premised on the chancellor's evidentiary and credibility assessments.

¶14. "The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts." *Johnson*, 859 So. 2d at 1014 (¶36) (quoting *Chamblee v. Chamblee*, 637 So. 2d 850, 860 (Miss. 1994)). "'[T]he chancellor has the ultimate discretion to weigh the evidence the way [he] sees fit' in determining where the child's best interest lies." *Blakely*, 88 So. 3d at 803 (¶17) (quoting *Johnson*, 859 So. 2d at 1013-14 (¶36)).

¶15. We find substantial evidence to support the chancellor's finding that Tommy has better parenting skills. It is true, as Angela points out, that Angela changed the children's diapers when they were young, helped the children with most of their school projects, and took the children to and from school every day. She also coached STM's soccer team and ensured STM had the support he needed at school. However, Angela exhibited a lack of patience with the children and was prone to emotional outbursts. Upon losing her temper,

6

she became physically violent, destroyed various household items, and punched holes in the wall. She also used profanity in front of the children. The evidence showed that Tommy was responsible for the bulk of the parenting duties. He put the kids to bed, did the laundry, cleaned up after supper, and packed the kids' lunches for the following day. He also got up in the middle of the night when the kids became sick. And Tommy disciplined the kids for behavioral problems. This issue is without merit.

### 4. Physical and Mental Health of the Parents

¶16. The chancellor found the evidence weighed in Tommy's favor and that Angela "has a history of depression and anxiety and takes medication for these issues." The chancellor found Tommy had no mental problems. Angela claims the chancellor's finding on her and Tommy's physical and mental health was based on a mischaracterization of the evidence.

¶17. During trial, Tommy testified that he was diagnosed with anxiety and had been taking medication for it. He said that with the help of a doctor, he was able to stop taking medication. Tommy also testified that Angela was diagnosed with anxiety and depression, for which she took medication. However, Angela testified that she was diagnosed with depression only. On appeal, Angela claims the chancellor's conclusion concerning this factor was based on a misstatement of fact. She argues that she only suffers from depression and that Tommy has anxiety.

¶18. We note that the testimony concerning the mental health of either party was brief. However, because Tommy testified Angela had been diagnosed with both anxiety and depression, the chancellor's finding was not based on a misstatement of fact. The chancellor

7

was entitled to determine the credibility and weight of both Angela's and Tommy's testimonies. *See Johnson*, 859 So. 2d at 1014 (¶36). We find no error here.

### 5. Home, School, and Community Record

¶19. The chancellor found this factor favored Tommy. Angela argues the evidence favors her based on STM's need for educational consistency, and again asks this Court to reweigh evidence on appeal, which we cannot do. *Id.* at 1013-14 (¶36).

¶20. In his general findings of fact, the chancellor noted that STM had been attending school in Lauderdale County for four years and received special care in school for his health conditions. However, the chancellor found that STM's entire family and support group lives in Jones County. The chancellor noted that AEM and STM attended church in Jones County and have relatives in Jones County who could help care for them when needed. In addition, the chancellor noted that Tommy continues to reside in AEM and STM's childhood home. The chancellor's findings on this issue are supported by substantial evidence in the record.

### 6. Employment Responsibilities

¶21. Angela claims the chancellor failed to address her and Tommy's employment responsibilities, and argues this factor should weigh in her favor.[4] Although the chancellor is required to make specific findings of fact on each *Albright* factor, it is not necessary that he state which party prevails under each factor. *Alderson v. Alderson*, 810 So. 2d 627, 629 (¶¶5-6) (Miss. Ct. App. 2002) (citing *Powell*, 792 So. 2d at 244-45 (¶11)). Here, the

---

[4] Angela also incorrectly contends that the capacity to provide primary care falls within this factor. *See Lee*, 798 So. 2d at 1288 (¶15) (The parents' willingness and capacity to provide primary care is considered with the "parenting skills" factor.).

chancellor did not separately delineate this factor in his *Albright* analysis, but he discussed Tommy's and Angela's employment responsibilities in his general findings of fact. The chancellor found that Tommy works Monday through Friday from 7:30 to 4:30 p.m. as an information-systems technician at Wayne Farms. He found that Angela works as a school teacher at Southeast Lauderdale Elementary School, and that she gets off at 3:30 p.m. daily. We find the chancellor properly considered Tommy's and Angela's employment responsibilities and his failure to state which party prevailed under this factor was not an abuse of discretion. *See Weeks*, 989 So. 2d at 411 (¶12).

## CONCLUSION

¶22.    There is substantial evidence in the record to support the chancellor's award of custody to Tommy. Finding no error in this case, we affirm the chancellor's judgment.

¶23.    **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, WESTBROOKS AND TINDELL, JJ., CONCUR.**