# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00851-COA

**TIFFANY MICHELLE COX**                                             **APPELLANT**

**v.**

**RYAN MICHAEL UPCHURCH**                                 **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/2019 |
| TRIAL JUDGE: | HON. MITCHELL M. LUNDY JR. |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JERRY WESLEY HISAW |
| ATTORNEY FOR APPELLEE: | LUTHER PUTNAM CRULL JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 07/21/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ.

## WESTBROOKS, J., FOR THE COURT:

¶1. Tiffany Cox (Cox) and Ryan Upchurch (Upchurch) were never married but are the natural parents of A.R.,[1] a daughter, who was born in September 2014. After a custody trial, the court awarded sole physical custody of A.R. to the father, Upchurch. Aggrieved, Cox appeals.

## FACTS AND PROCEDURAL HISTORY

¶2. Cox and Upchurch began dating in 2011. Cox and her two children moved in with Upchurch at his residence in Grenada County, Mississippi in 2014. At the time Cox moved in with Upchurch, she was pregnant with A.R., who was born in 2014 at a hospital in

---

[1] We use initials to protect identities in this opinion.

Mississippi. Upchurch is listed as A.R.'s father on the birth certificate.

¶3. After A.R.'s birth, Cox and Upchurch became engaged. Upchurch gave Cox an engagement ring, but the two were never married. At A.R.'s second birthday party, Cox wanted to leave the party early, and according to testimony in the record, she and Upchurch got into an argument because Upchurch said she was leaving to drink with friends. After the argument about Cox's intended plans, she threw the engagement ring at Upchurch, and the relationship ended.

¶4. On July 5, 2017, Upchurch filed a complaint to establish paternity, for custody, and for other relief (including a request for a temporary restraining order). A Rule 81 summons was issued on July 14, 2017, for a hearing set to take place on July 25, 2017.[2] On July 18, 2017, a temporary restraining order was entered, awarding immediate physical and legal custody of A.R. to Upchurch. On July 24, 2017, Cox filed her answer to Upchurch's complaint, as well as a motion to set aside the temporary restraining order.

¶5. After a hearing on July 25, 2017, the court conducted an *Albright*[3] analysis and ruled that A.R.'s best interests would be served by awarding temporary physical custody to Upchurch and joint legal custody to both parents.

¶6. On August 1, 2017, Upchurch filed a motion to "re-open proof on temporary matters" on the basis that Cox had perjured herself in giving testimony to the court regarding her employment. On August 2, 2017, the court filed its order regarding temporary custody

---

[2] M.R.C.P. 81.

[3] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

stemming from the July 25 hearing. The court sent a letter to the parties, stating that the order was prepared and filed prior to receipt of Upchurch's motion to re-open proof.

¶7. Cox filed a motion for modification of the temporary custody order on August 18, 2017. On December 18, 2017, the court entered an order modifying temporary custody, which awarded specific holiday and weekend visitation to Cox. However, physical custody remained with Upchurch. On January 15, 2018, Cox filed a motion for appointment of a guardian ad litem. An agreed order appointing Ginger Miller as the guardian ad litem was entered on January 23, 2018.

¶8. On March 28, 2018, the court entered an order setting the custody dispute for trial on July 25, 2018. The trial took place on July 25-26, 2018, and an additional day on October 3, 2018, as well as a partial day on November 27, 2018. The court heard testimony from dozens of witnesses provided by Cox and Upchurch, as well as Ginger Miller, the guardian ad litem (GAL), and accepted evidence in open court.

¶9. The GAL participated in and testified at trial. The GAL's sixty-nine page report was admitted into evidence. In preparing her report, the GAL interviewed twenty-three witnesses who had information relevant to custody. Through the report and her testimony at trial, the GAL recommended that Upchurch receive physical custody of A.R., both parties share legal custody, and that Cox receive liberal periods of visitation.

¶10. At the conclusion of trial, the chancellor entered his written opinion, judgment, and amended judgment, awarding physical custody of A.R. to Upchurch, joint legal custody to the parties, and liberal visitation to Cox. The chancellor's conclusion was consistent with the

previous orders of the court: (1) the temporary restraining order filed on July 18, 2017; and (2) the temporary custody order filed on August 2, 2017. On January 3, 2019, the chancellor issued his findings of facts, and on February 26, 2019, a judgment was entered, which incorporated the previous findings of fact.

¶11. The chancellor's decision was based upon the testimony of witnesses, the evidence presented and arguments made at trial, the testimony and report of the GAL, and an *Albright* analysis with specific findings for each factor. The chancellor's *Albright* analysis is summarized as follows:

1. Continuity of Care: The chancellor found this factor favored neither party.
2. Parenting Skills: The chancellor found this factor favored neither party.
3. Willingness and Capacity to provide primary care: The chancellor found that while both Upchurch and Cox had the willingness to provide care, capacity to provide care favored Upchurch.
4. Employment: The chancellor found this factor favored neither party.
5. Physical and Mental Health and Age of Parents: The chancellor found this factor favored neither party.
6. Emotional Ties: The chancellor found this factor favored neither party.
7. Home, School and Community Record: The chancellor found this factor favored Upchurch.
8. Preference of Child: This factor was not applicable due to the age of the child.
9. Moral Fitness: The chancellor found this factor favored neither party.
10. Stability: The chancellor found this factor favored Upchurch.

The chancellor heard from dozens of witnesses and caretakers as well as a detailed report from the GAL. Additionally, the chancellor heard from the parties and their attorneys during trial. After consideration of all facts and information presented by the parties, the chancellor found that three factors favored Upchurch: willingness and capacity to provide primary care; home, school, and community record; and stability. The chancellor found that no factors

4

favored Cox. The remaining factors favored neither parent over the other (i.e., they were neutral).

¶12.    On March 6, 2019, Cox filed a motion for reconsideration, correction of judgment, or, in the alternative, a new trial. The motion did not set forth a request to re-open proof. Upchurch responded to Cox's motion on March 14, 2019. A hearing was held on April 30, 2019, and the chancellor entered his amended judgment on May 14, 2019. Disagreeing with the chancellor's award of physical custody of the parties' child to Upchurch, Cox appeals.

## STANDARD OF REVIEW

¶13.    "A chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Sanderson v. Sanderson*, 824 So. 2d 623, 625-26 (¶8) (Miss. 2002). "This Court does not re[-]evaluate the evidence, re[-]test the credibility of witnesses, nor otherwise act as a second fact-finder. Unless the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard, we will affirm." *Belding v. Belding*, 736 So. 2d 425, 427 (¶5) (Miss. Ct. App. 1999) (citing *Wright v. Stanley*, 700 So. 2d 274, 280 (Miss. 1997)). "If there is substantial evidence in the record to support fact-findings, no matter what contrary evidence there may also be, the appellate court will uphold the chancellor." *Id.* (citing *Smith v. Jones*, 654 So. 2d 480, 485 (Miss. 1995)). "The chancellor, by his presence in the courtroom, is best equipped to listen to the witnesses, observe their demeanor, and determine their credibility and what

5

weight ought to be ascribed to the evidence given by those witnesses." *Rogers v. Morin*, 791 So. 2d 816, 826 (¶39) (Miss. 2001).

## DISCUSSION

¶14.   The single issue Cox raises is whether the chancellor erred in awarding sole physical custody to Upchurch. "[T]he Chancery Court enjoys a large amount of discretion in making its determination of what is in the best interests of the child." *Id*. at 820 (¶9). "[T]he polestar consideration in child custody cases is the best interest and welfare of the child." *Albright*, 437 So. 2d at 1005. "The *Albright* factors are a guide. They are not 'the equivalent of a mathematical formula.'" *Lawrence v. Lawrence*, 956 So. 2d 251, 258 (¶23) (Miss. Ct. App. 2006) (quoting *Lee v. Lee*, 798 So. 2d 1284, 1288 (¶15) (Miss. 2001)).

¶15.   "While it is necessary for the chancellor to make specific findings of fact under each applicable *Albright* factor, it is not necessary for her to state who prevails under each factor." *Weeks v. Weeks*, 989 So. 2d 408, 411 (¶12) (Miss. Ct. App. 2008). "The Mississippi Supreme Court has held that when the chancellor's findings of facts are supported by substantial evidence in the record, even when contrary evidence exists, we will uphold the chancellor's decision." *Id*. at 412 (¶18) (citing *Bower v. Bower*, 758 So. 2d 405, 412 (¶31) (Miss. 2000)). Further, the supreme court specifically held that because it found "evidence in the record to support the chancellor's analysis related to the [*Albright*] factors, [the supreme court found] no error with the chancellor's determination." *Id*.

¶16.   Looking at the record in the case before us, there is substantial evidence to support the chancellor's decision to award physical custody of A.R. to Upchurch. The chancellor

made specific findings under each and every *Albright* factor. Further, the chancellor stated specifically whether a factor favored Cox or Upchurch or was neutral. The chancellor's decision was based upon witnesses who testified at trial on behalf of both parties, the testimony and report of the GAL, and the testimony at trial.

¶17. Ultimately, the chancellor found that Upchurch was more positioned to provide a stable home and provide for A.R. in a consistent manner. Put another way, the chancellor found Upchurch to have more favorable capacity to provide primary care for A.R. The chancellor also found that Upchurch was in a better position to provide care for A.R. based upon a review of the home, school, and community record. The chancellor's conclusions were consistent with the lengthy report submitted by the GAL. The chancellor's decision, and subsequent order, was based on the evidence and a detailed *Albright* analysis.

¶18. With regard to the factors favoring Upchurch, the chancellor made specific findings explaining the decision. For willingness and capacity, the chancellor said both parents exhibited a genuine willingness to provide primary care. In favoring Upchurch over Cox, the chancellor stated that "because of the responsibilities that Tiffany has in spreading her 'capacity' between three children, especially two teenagers (in different schools and levels of maturity), and Ryan having only A.R. and the benefit of close family assistance this 'capacity' weighs out in favor of Ryan. This factor favors him." In favoring Upchurch over Cox regarding the community record, the chancellor stated that "[b]ased upon the fact that A.R. has lived predominately in Grenada County and is a happy child attending Miss Mary's with the owner of same saying that she's doing well, along with the other members of the

7

community testifying as to A.R.'s happiness, this factor favors Ryan." And finally, regarding stability, the chancellor stated that "[t]his factor favors Ryan as he is gainfully employed in a family business that is certainly stable and he has been so employed for several years. Coupled with the fact that he and A.R. reside in the home she was brought home from the hospital to and is surrounded in close proximity to extended family, this factor favors Ryan."

¶19. Both parties presented evidence and made arguments at trial. It is clear from the record that the chancellor heard each and every argument made. Ultimately, the chancellor made a decision based upon substantial evidence. Our supreme court has stated, "[W]hen 'there is conflicting testimony, the chancellor, as the trier of fact, is the judge of the credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation.'" *Mayton v. Oliver*, 247 So. 3d 312, 322 (¶34) (Miss. Ct. App. 2017) (quoting *Bowen v. Bowen*, 982 So. 2d 385, 395 (¶42) (Miss. 2008)).

¶20. Upon review, we cannot say that the chancellor was manifestly wrong, was clearly erroneous, or applied an incorrect legal standard in his *Albright* analysis. Substantial evidence supported the chancellor's findings. We therefore affirm the chancellor's judgment granting physical custody of the parties' minor child to Upchurch.

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**