**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2023-CA-00237-COA**

**CHRISTOPHER MORLAND**                                                 **APPELLANT**

**v.**

**MEGAN D. MORLAND**                                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/15/2022 |
| TRIAL JUDGE: | HON. LAWRENCE PRIMEAUX |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | GEORGE HOWARD SPINKS |
| ATTORNEYS FOR APPELLEE: | JOHN CARL HELMERT JR. |
| | FRANCES SMITH STEPHENSON |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 10/29/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., SMITH AND EMFINGER, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     Christopher and Megan Morland were granted a divorce on the ground of irreconcilable differences. Christopher appeals from the final judgment of the Clarke County Chancery Court on the remaining issues the parties submitted to the chancellor for resolution. Specifically, he asserts the trial court erred by (1) finding it was in their child's best interest to be in Megan's exclusive care, custody, and control subject to standard visitation rights for Christopher, (2) ordering him to pay $567.00 per month in child support, and (3) ordering him to pay Megan's attorney's fees. Upon review, we find no error and affirm the chancellor's judgment.

**FACTS**

¶2.     The parties were married on July 19, 2008. During their marriage, they had one daughter, C.M.,[1] born in 2008. Following their separation around November 2018, the parties alternated custody of C.M. by informal agreement. On September 17, 2019, Christopher filed a complaint for divorce on the grounds of habitual cruel and inhuman treatment, adultery, and habitual and excessive drug use. Alternatively, he sought an irreconcilable differences divorce. Christopher additionally asked that the chancellor, inter alia, grant him permanent physical and legal custody of C.M. and reasonable child support from Megan.

¶3.     On January 28, 2021, the chancellor held a hearing on Megan's motion for temporary relief included in her answer and counterclaim previously filed on December 12, 2019. Following the hearing, the chancery court entered a temporary order granting the parties temporary joint legal and physical custody, ordering Christopher to pay child support and maintain health insurance for C.M. In August 2022, the parties consented to an irreconcilable differences divorce, and submitted several issues to the chancery court for determination, including custody of C.M., child support, alimony,[2] equitable division of Christopher's military retirement, and attorney's fees.

¶4.     The chancery court filed its opinion on November 4, 2022, and subsequently filed its final judgment on November 15, 2022. After analyzing the factors to be considered in a determination of child custody as outlined in the case of *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983), the chancellor granted Megan care, custody and control of C.M.

---

[1] We use initials to protect the identity of the minor child.

[2] During the trial on November 3, 2022, Megan withdrew her claim for alimony as a contested issue.

subject to Christopher's right of visitation. The chancellor also ordered Christopher to pay child support and maintain health insurance for C.M. Additionally, the chancellor granted Megan forty-six percent of Christopher's military retirement. The chancellor also awarded Megan attorney's fees of $2,000, with per annum interest from the date of judgment at the rate of eight percent, to be paid at the rate of $100 a month. Christopher filed a motion for reconsideration, a motion for judgment notwithstanding verdict, and a motion for a new trial. The chancellor denied the motion to reconsider judgment, the motion for a new trial, and all other requested relief. Aggrieved by the chancellor's judgment, Christopher appeals.

## STANDARD OF REVIEW

¶5.     Our standard of review in domestic-relations matters is well established: "This Court will not disturb a chancellor's findings unless they were manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard. Chancellors are afforded wide latitude in fashioning equitable remedies in domestic-relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record." *Stuckey v. Stuckey*, 341 So. 3d 1030, 1036 (¶13) (Miss. Ct. App. 2022) (citations omitted). "When reviewing a chancellor's decision, we will accept a chancellor's findings of fact as long as the evidence in the record reasonably supports those findings. The chancellor's interpretation and application of the law is reviewed de novo." *Id*.

## DISCUSSION

### I.     Whether the chancellor's *Albright* analysis was flawed.

¶6.     On appeal, Christopher first asserts that the chancellor's *Albright* analysis was

erroneous because the chancellor failed to provide sufficient analysis and reasoning to award the full care, custody and control of C.M. to Megan, subject to Christopher's visitation rights. On appeal, a chancellor's findings of fact will be affirmed if they are supported by substantial credible evidence. *Heisinger v. Riley*, 243 So. 3d 248, 256-57 (¶30) (Miss. Ct. App. 2018). "Matters involving child custody are within the sound discretion of the chancellor." *Id*. We will not reverse the chancellor's custody decision "unless the chancellor abused his discretion, was manifestly wrong, or clearly erroneous, or applied an erroneous legal standard." *Id*.

¶7. "The polestar consideration in child custody cases is the best interest and welfare of the child." *Albright*, 437 So. 2d at 1005. In evaluating the child's best interest, the chancellor must consider the following factors: (1) age, health, and sex of the child; (2) which parent had "continuity of care prior to the separation"; (3) "which has the best parenting skills"; (4) which has the "willingness and capacity to provide primary child care"; (5) both parents' employment responsibilities; (6) "physical and mental health and age of the parents"; (7) "emotional ties of parent and child"; (8) "moral fitness of the parents"; (9) the "home, school and community records of the child"; (10) the child's preference, if the child is at least twelve years old; (11) the stability of the home environment and employment of each parent; and (12) any "other factors relevant to parent-child relationship" or the child's best interest. *Id*.

¶8. The chancellor must address each *Albright* factor that is applicable to the case. *Powell v. Ayars*, 792 So. 2d 240, 244 (¶10) (Miss. 2001). After applying the *Albright* factors in the matter before us, the chancellor determined that it was in C.M.'s best interest to be in

Megan's exclusive care, custody, and control, subject to Christopher receiving standard visitation. In the first assignment of error pertaining to the *Albright* analysis, Christopher contends that the chancellor erred because he did not ultimately state who prevailed under certain factors. However, the chancellor need not decide who prevails under each factor. *Weeks v. Weeks*, 989 So. 2d 408, 411 (¶12) (Miss. Ct. App. 2008). In *Weeks*, this Court found that although the chancellor did not discuss the *Albright* factors at length, it was clear from the record that she considered each applicable factor, and the record supported her ruling. *Id.* While it is "preferable" for the chancellor to make specific findings of fact on each *Albright* factor, a chancellor's failure to do so does not automatically amount to a reversible error. *Polk v. Polk*, 332 So. 3d 348, 356 (¶29) (Miss. Ct. App. 2021).

¶9.     Here, we note that the chancellor's judgment reflects a thorough consideration and deliberation of each of the factors of which Christopher complains. Specifically, he found that C.M. was a thirteen-year-old seventh grader in good health, taking medication for Attention Deficit Hyperactivity Disorder (ADHD), and she has dyslexia. Therefore she requires extra help with reading, especially comprehension tasks. The chancellor stated in his opinion that both parties had been involved in the care for the child and that each parent cared for C.M. Yet, the chancellor correctly found that because as many as six children and two adults were in Christopher's home, Megan's home was quieter and more conducive to C.M. getting her school work done. Additionally, the chancellor pointed out in his opinion that Megan, due to her role as a school teacher, routinely assisted C.M. with her homework, even when she was at Christopher's home.

¶10.    In his *Albright* argument, Christopher next submits that the chancellor did not give appropriate weight to pertinent facts and testimony under the following individual factors: continuity of care, emotional ties of the parties and child, moral fitness, and stability of the home environment and employment. In doing so, Christopher highlights specific evidence which he believes demonstrates that each of these factors should be found in his favor. Essentially, he asks that the appellate court re-weigh the evidence. However, as we have held numerous times, we are not permitted to re-weigh the evidence to make our own independent determination of where we think the weight of the evidence lies. *Ivy v. Ivy*, 863 So. 2d 1010, 1013 (¶10) (Miss. Ct. App. 2004). This Court has found that although all the factors are important, the chancellor has the ultimate discretion to weigh the evidence the way he sees fit in determining the child's best interest. *Scott v. Boudreau*, 375 So. 3d 688, 694 (¶23) (Miss. Ct. App. 2023). Ultimately, in his consideration of these factors, the judgment indicates the chancellor gave consideration to the evidence that showed, as a thirteen-year-old female, C.M. felt closer to her mother, that both parties have had stable home environments and employment, and that the parties were in extramarital relationships. "The chancellor, by his presence in the courtroom, is best equipped to listen to witnesses, observe their demeanor, and determine the credibility of the witnesses and what weight ought to be ascribed to the evidence given by those witnesses." *Mabus v. Mabus*, 890 So. 2d 806, 819 (¶56) (Miss. 2003). This Court finds no clear error or abuse of discretion in the chancellor's consideration of these factors.

¶11.    The next factors on which Christopher bases his *Albright* allegations of error are the

willingness and capacity to provide primary childcare and employment responsibilities.[3] Although these are separate factors, Christopher argues them jointly and asserts that the finding of the trial court should have led to granting joint physical and legal custody and that the chancellor's analysis was counterintuitive in nature. He is correct in pointing out that after consideration of the evidence, the chancellor found that both parties have the willingness and capacity to provide primary childcare, and both have demonstrated the ability to balance care for the child with their responsibilities of employment. However, one factor is not more important than the others. Again, Christopher is asking this Court to re-weigh the evidence, and precedent prevents us from substituting our judgment for that of the fact finder due to the chancellor's proximity to the parties, as opposed to the relatively cold record we have on appeal. *See Price v. McBeath*, 989 So. 2d 444, 458 (¶58) (Miss. Ct. App. 2008). All the *Albright* factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way he sees fit. *Vassar v. Vassar,* 228 So. 3d 367, 375 (¶27) (Miss. Ct. App. 2017). This Court will not "second guess" a chancellor's custody decision absent some legal error or manifestly erroneous factual findings. *Culver v. Culver*, 371 So. 3d 726, 731 (¶23) (Miss. Ct. App. 2023). We find no clear error or abuse of discretion in the chancellor's consideration of these factors.

¶12.    As another assignment of error under the chancellor's *Albright* analysis, Christopher alleges that following an interview pursuant to *Jethrow v. Jethrow*, 571 So. 2d 270 (Miss.

---

[3] Christopher argues the chancellor erred in applying all *Albright* factors except the physical and mental health and age of the parents and the general "other factors" provision; therefore, these factors will not be addressed.

1990), the chancellor erroneously found that C.M. was competent to testify and that C.M.'s reasons for her preference to live with her mother were rational, decisive, mature for her age, and in her best interest. Under *Jethrow*, a chancellor is required to determine if the child is competent to testify and whether it is in the child's best interest to testify. *Denham v. Denham*, 351 So. 3d 954, 960 (¶7) (Miss. 2022) (citing *Jethrow*, 571 So. 2d at 270-74). Here, the chancellor found that there was no evidence of any undue influence in C.M.'s stated preference. The chancellor further highlighted that C.M. testified that Christopher promised to buy her a puppy if she told the judge that she wanted to live with him. The chancellor also pointed out that during the *Jethrow* interview, C.M. stated that she was sure that Christopher would be upset if she said she wanted to live with her mother. This Court finds no clear error or abuse of discretion in the chancellor's consideration of the preference of the child.

¶13. Additionally, Christopher argues in his brief on appeal that in his final review pertaining to custody of C.M., the chancellor failed to address the "what, why, and how" of its decision and whether a shared custody arrangement was appropriate. However, the record and judgment by the chancellor contradict this assertion. In addition to the findings previously described, the judgment of the chancellor also focused on the evidence relevant to whether a shared custody arrangement would be in the child's best interest. Specifically, the chancellor pointed out that Christopher blocked Megan on his cell phone, making communication between parents more difficult than necessary. Additionally, the chancellor stated in his opinion that Christopher has proved that he will not abide by the court's orders, and he has demonstrated an unwillingness and inability to achieve the required levels of

communication and cooperation for joint legal and physical custody. "Our Supreme Court has observed the principle that 'the chancellor should not award joint custody unless the parents are capable of sharing joint custody cooperatively.'" *Garner v. Garner*, 343 So. 3d 1097, 1107 (¶54) (Miss. Ct. App. 2022) (quoting *Phillips v. Phillips*, 45 So. 3d 684, 697 (¶34) (Miss. Ct. App. 2010)). The chancellor also points out that Christopher has an authoritarian approach that makes C.M. afraid of him, and he can be controlling when it comes to her medication and medical care. On the other hand, based on C.M.'s testimony, the chancellor stated that Megan allowed C.M. to learn important and valuable lessons about her medication on her own. Megan was also an English teacher and actively involved in helping C.M. with her homework even while she was in Christopher's care.

¶14.    Our review of the record reflects that the chancellor's custody award was supported by substantial credible evidence. Given our deferential standard of review, we find the chancellor did not abuse his discretion. Therefore, we affirm the judgment granting Megan the care, custody and control of C.M., subject to Christopher's visitation rights.

## II.    Child Support

¶15.    On appeal, Christopher argues that the chancellor erred in awarding Megan $567 per month in support of C.M.  As basis, Christopher primarily re-urges that the chancellor should have awarded joint physical custody of C.M. and as a result undertaken a different analysis of both parents' gross earnings and derived a support amount as to the percentage applied to both parents. Importantly, Christopher failed to cite any legal authority to support his argument, procedurally barring this issue on appeal. *Carter v. Carter*, 324 So. 3d 327, 331

(¶29) (Miss. Ct. App. 2021). Regardless, because we find no error in the custody award, we also find that this portion of his argument pertaining to child support has no merit.

¶16. At the time of trial, Christopher submitted a financial statement showing gross income of $6,693 per month with total monthly deductions of $1,750, resulting in adjusted income of $4,943. Utilizing this figure, the chancellor acknowledged that it would result in a support payment of $692 per month under the statutory guideline of fourteen percent of Christopher's adjusted income. Miss. Code Ann. § 43-19-101(1) (Rev. 2021). Taking into consideration Christopher's other two biological children residing with him, the chancellor reduced his payment accordingly and ordered Christopher to pay to Megan $567 in monthly child support.

¶17. A chancery court has discretion in determining an award of child support, and we will not reverse that determination unless the chancellor was manifestly wrong in his finding of fact or manifestly abused his discretion. *Harden v. Scarborough*, 240 So. 3d 1246, 1255 (¶26) (Miss. Ct. App. 2018) (quoting *Porter v. Porter*, 23 So. 3d 438, 449 (¶30) (Miss. 2009)). The guidelines establish a rebuttable presumption that support for one child should equal fourteen percent of the payor's adjusted income. Mississippi Code Annotated section 43-19-101(3)(d) provides that if the absent parent is also the parent of another child or other children residing with him, then the court may subtract an amount that it deems appropriate to account for the needs of said child or children. We find that the chancellor did not abuse his discretion by setting child support based on the statutory guidelines with the deduction to account for the needs of his other children residing with him. Finding no reversible error,

10

we affirm the chancellor's finding.

### III.   Attorney's Fees

¶18.   In Christopher's final assignment of error, he alleges the chancellor erred by awarding Megan attorney's fees in the amount of $2,000. "The award of attorney['s] fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards." *Speights v. Speights*, 126 So. 3d 76, 81 (¶15) (Miss. Ct. App. 2013) (quoting *Creekmore v. Creekmore*, 651 So. 2d 513, 520 (Miss.1995)). "A trial court abuses its discretion by awarding attorney's fees without first finding that the party is unable to pay the fees." *Black v. Black* , 240 So. 3d 1226, 1235 (¶27) (Miss. Ct. App. 2017) (quoting *Hankins v. Hankins*, 729 So. 2d 1283, 1286 (¶13) (Miss. 1999)). "Chancellors are instructed to apply the *McKee* factors in granting or denying attorney's fees." *Id*. (quoting *Rogers v. Rogers*, 94 So. 3d 1258, 1267 (¶30) (Miss. Ct. App. 2012)). These factors include the "(1) relative financial ability of the parties; (2) the skill and standing of the attorney employed, (3) novelty and difficulty of issues in the case, (4) the responsibility required in managing the case, (5) time and labor required, (6) the usual and customary charge in the community, and (7) whether the attorney was precluded from undertaking other employment by accepting the case." *Gilmer v. Gilmer*, 297 So. 3d 324, 339 (¶53) (Miss. Ct. App. 2020).

¶19.   Prior to determining whether to award attorney's fees in this matter, the chancellor heard testimony from Megan and her trial attorney and received an itemized statement detailing the work provided in this case. The chancellor found that Megan proved she did not have the ability to pay the balance of her attorney's fees. After specifically taking into

account the applicable *McKee* factors, the chancellor ordered Christopher to pay Megan's attorney's fees in the amount of $2,000, with per annum interest from the date of judgment at the rate of eight percent. The chancellor ordered Christopher to pay Megan $100 per month commencing November 10, 2022, to be credited against the judgment, continuing until the judgment is paid in full. We find no abuse of discretion in the chancellor's award of attorney's fees to Megan.

## CONCLUSION

¶20. Upon review, we find no clear or manifest error or abuse of discretion in the chancery court's custody determination, granting of child support, or allocation of attorney's fees. We therefore affirm the chancellor's final judgment.

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. WEDDLE, J., NOT PARTICIPATING.**